REYNALDO G. GARZA, Circuit Judge:
Defendant appeals her convictions of wire fraud and money laundering. We find that the district judge abused her discretion for failing to recuse herself pursuant to 28 U.S.C. § 455(a), as the facts underlying this case create an appearance of impropriety. After reviewing the record we have concluded that the conviction should stand. The sentence, however, must be vacated in order to maintain the integrity of the judicial system. Accordingly, we ask the Chief Judge of the Fifth Circuit to designate a judge outside of the Southern District of Texas to resen-tence Appellant and hold any other appropriate proceedings necessary to effectuate this opinion.
Background
Defendant and her husband owned the Houston-based trucking company, Irish & Cherokee Transportation, Inc. (ICT). Defendant directed the financial operations of ICT. Redex, a Salt Lake City-based corporation, was engaged in the business of factoring trucking company’s freight invoices.[1] ICT executed an agreement with Redex in February of 1987 to sell its overdue accounts receivable to Redex.
Defendant fabricated invoices by creating forty-five company names to identify purported shippers with which ICT did business. These fictitious invoices were then combined with legitimate invoices and sent to Redex. ICT factored over 500 invoices through Re-dex during the period alleged in the indictment. The total loss suffered by Redex due to the fictitious accounts totalled approximately $800,000.00. Defendant transferred the factored funds through several banks in different states by wire transfer.
On June 25, 1992, in the United States District Court for the Southern District of Texas, Defendant was indicted for wire fraud and money laundering. After a jury trial, Defendant was convicted of two counts of money laundering and nine counts of wire *155 fraud. The Honorable Judge Melinda Harmon sentenced Defendant to concurrent terms of five years’ imprisonment for each wire fraud conviction, and to consecutive terms of twenty years’ imprisonment for the money laundering convictions.[2] Defendant was also ordered to pay the unpaid balance of $418,921.00. This appeal ensued.
I.
The substance of Appellant’s complaint is that, because of the relations between Judge Melinda Harmon and Michael Wood, the publicity and bad feelings arising from a series of legal incidents that occurred several years earlier, and the lengthy sentence term imposed, a reasonable person would question Judge Melinda Harmon’s impartiality. Courts have repeatedly expressed the importance of an impartial judiciary: “[o]ne of the fundamental rights of a litigant under our judicial system is that he is entitled to a fair trial in a fair tribunal, and that fairness requires an absence of actual bias or prejudice in the trial of the case.” United States v. Wade, 931 F.2d 300, 304 (5th Cir.) (quoting United States v. Brown, 539 F.2d 467, 469 (5th Cir.1976)), cert. denied, 502 U.S. 888, 112 S.Ct. 247, 116 L.Ed.2d 202 (1991); In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1954). The right to a fair and impartial trial is fundamental to the litigant; fundamental to the judiciary is the public’s confidence in the impartiality of our judges and the proceedings over which they preside. “Justice must satisfy the appearance of justice.” In re Murchison, 349 U.S. at 136, 75 S.Ct. at 625. This is the very purpose of 28 U.S.C. § 455(a); Section 455(a) provides that a judge shall recuse herself from any proceeding in which her impartiality might reasonably be questioned. The Supreme Court, in Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 860-61, 108 S.Ct. 2194, 2203, 100 L.Ed.2d 855 (1988), described the standard as whether a reasonable and objective person, knowing all of the facts, would harbor doubts concerning the judge’s impartiality.[3] “The goal of section 455(a) is to avoid even the appearance of partiality.” Id. at 860, 108 S.Ct. at 2203. Put simply, avoiding the appearance of impropriety is as important in developing public *156 confidence in our judicial system as avoiding impropriety itself.
In 1989, Appellant owed a judgment in state court.[4] Michael Wood was appointed receiver over ICT, Appellant’s company. Both sides concede that a hostile relationship developed between Michael Wood and Appellant due to the receivership appointment. On November 21, 1989, Appellant allegedly attempted to drive a truck off ICT property in violation of the receivership arrangement. Michael Wood attempted to stop her. Appellant’s daughter interposed her car between Michael Wood and Appellant, effectuating Appellant’s escape. On November 29, 1989, Michael Wood filed a motion for contempt in the civil bankruptcy receivership case. The state district court granted the motion and Appellant was placed in custody. On appeal the order was overturned. On January 5, 1990, Michael Wood filed theft charges against Appellant and her daughter. On February 1, 1990,[5] Appellant’s daughter filed criminal assault charges against Michael Wood for slapping and threatening her as well as for running into her ear. Michael Wood was arrested and incarcerated. Francis Harmon, Judge Melinda Harmon’s husband, represented Michael Wood in this criminal proceeding. Finally, in 1992, Appellant was indicted for wire fraud and money laundering involving ICT, the same company for which Michael Wood was appointed receiver.
Michael Wood and Judge Sharolyn Wood, Michael Wood’s wife, were law school classmates of Judge Melinda Harmon and her husband. They were friends of twenty-two years as of the time of the above-mentioned incidents. In fact, Francis Harmon is quoted as stating that he did not visit the district attorney concerning the assault charges as Michael Wood’s attorney but as his friend. Francis Harmon and Michael Wood had been law partners for six years.
It is clear that there exists no small amount of resentment and animosity, if not blind hatred between Michael Wood and Appellant. The question is whether Judge Melinda Harmon’s friendship with Michael Wood might cause a reasonable person, who knew of the underlying facts, to harbor doubts about Judge Melinda Harmon’s impartiality; whether their long and continuous friendship and the above-discussed incidents raise a Section 455(a) appearance. Because recusal motions are committed to the sound discretion of the district court, the issue on appeal is whether the court abused its discretion by answering the above question in the negative.
II.
We hold that the reasonable person would harbor doubts about Judge Melinda Harmon’s impartiality. Liljeberg held that Section 455(a) is an objective inquiry. This is essential when the question involves appearance. Therefore, we ask how things appear to the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person. See In re Mason, 916 F.2d 384, 386 (7th Cir.1990). The Seventh Circuit recognized.the problem with implementing this objective standard. Id. Judges must ascertain how a reasonable person would react to the facts. Problematic *157 is the fact that judges do not stand outside of the judicial system; they are intimately involved in the process of obtaining justice. Judges who are asked to recuse themselves are reluctant to impugn their own standards. Likewise, judges sitting in review of others do not like to cast aspersions. “Yet drawing all inferences favorable to the honesty and care of the judge whose conduct has been questioned could collapse the appearance of impropriety standard under § 455(a) into a demand for proof of actual impropriety.” Id. Accordingly, we are mindful that an observer of our judicial system is less likely to credit judges’ impartiality than the judiciary.
The Fifth Circuit has established a body of ease law applying the Section 455(a) standard. Unfortunately, but not surprisingly, no case is precisely on point; after all, each § 455(a) case is extremely fact intensive and fact bound, and must be judged on its unique facts and circumstances more than by comparison to situations considered in prior jurisprudence. This Court has ruled, in factually limiting circumstances, that friendship between the judge and a person with an interest in the case is not sufficient grounds to reverse a judge’s failure to recuse.[6] Nevertheless, the facts before us create a Section 455(a) appearance. The judges’s close personal friend, a prominent and successful Houston lawyer, was accused of criminal assault; it appears that he was the subject of an abuse of criminal process through charges brought by Appellant.[7] Michael Wood and Appellant were embroiled in a series of vindictive legal actions resulting in a great deal of publicity, potentially besmirching Michael Wood’s name. Some of that publicity brought out the fact that Michael Wood’s wife was a state district judge, and brought out the relationship between Michael Wood and Judge Melinda Harmon’s lawyer-husband. Under these particular circumstances, is what happened to Michael Wood enough to cause a reasonable person to doubt the impartiality of Judge Melinda Harmon — Michael Wood’s good friend, Michael Wood’s wife’s good friend, and Michael Wood’s lawyer and former partner’s wife — as she plays no small part in determining the fate of the person who caused Michael Wood to be incarcerated? We think yes.[8] Public respect for the judiciary demands this result.
[Our] stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way “justice must satisfy the appearance of justice.”
Where Appellant was involved in an extremely hostile relationship with a person of such a long, close, and multi-faceted friendship with *158 Judge Melinda Harmon, a relationship that resulted in extensive negative publicity, and where Appellant’s liberty was at stake before this very Judge, we are convinced that a reasonable person would question the impartiality of the district judge.[9] Accordingly, we hold that Judge Melinda Harmon abused her discretion in failing to recuse herself.[10]
III.
We must now consider the appropriate remedy for the breach of Section 455(a). Although Section 455(a) defines the circumstances that mandate disqualification of federal judges, it silently delegates to the judiciary the task of fashioning the remedies that will best serve the purpose of the legislation. Liljeberg, 486 U.S. at 862, 108 S.Ct. at 2204. We hold that a violation of Section 455(a) does not automatically require a new trial. See id. (stating that “there is surely room for harmless error committed by busy judges who inadvertently overlook a disqualifying circumstance”); United States v. Wade, 931 F.2d 300, 304 n. 5 (5th Cir.) (stating that even if a movant were to meet the § 455(a) test requiring recusal, this may not be sufficient for the ordering of a new trial), cert. denied, 502 U.S. 888, 112 S.Ct. 247, 116 L.Ed.2d 202 (1991); United States v. Couch, 896 F.2d 78 (5th Cir.1990) (holding that the appellant’s claims of an appearance of impropriety do not rise to the level of a fundamental defect in due process requiring a new trial). Disqualification under Section 455(a) is designed for the benefit of the judicial system, and even if a judge errs in failing to recuse herself, the error does not necessarily call into question the decisions of the court.
After a thorough review of the trial record, we are convinced that the conviction should stand. First, Appellant does not contend that Judge Melinda Harmon was actually biased during the trial phase, nor does she allege an explicit nexus between the alleged errors and the appearance of bias. Second, Appellant never contends that she suffered any harm during trial because of any alleged bias or prejudice. Third, we find neither an indication of bias in the trial record nor any error requiring reversal.
Appellant asserts several errors, including prosecutorial misconduct, improper evidentiary rulings, and improper jury instructions. During closing argument both Appellant and Appellee commented on the fact that a witness had not been called. Both parties implied that failing to call the witness indicated that the witness would hurt the other’s case, respectively. Appellant argues that the prosecution’s comments improperly shifted the burden of proof. Judge Melinda Harmon properly instructed the jury that the burden is upon the prosecution and that the *159 defense need not bring forth any testimony, witnesses, or evidence. Considering the responsive nature of the prosecution’s comment and the instruction and charge given to the jury, we find neither error nor any indication of bias.[11] Appellant also contends that the court erred in admitting Exhibits 282 through 2032. During trial, the witness went through Exhibits 1 through 281, one by one, identifying each as a document she prepared or one that she recognized as prepared by a specific co-worker. In order to speed up the process, Judge Melinda Harmon admitted all the exhibits, making it abundantly clear that Appellant was free to question any witness about any exhibit on cross-examination. This procedure is in accord with Fifth Circuit case law;[12] again, we find neither error nor any indication of bias. Appellant also complains that the court did not properly instruct the jury. Upon review of the indictment, the instructions, and the applicable law we are' of the opinion that the “jury instructions ... as a whole [are] a correct statement of the law.” United States v. Faulkner, 17 F.3d 745, 766 (5th Cir.1994). In sum, the trial appears to have- been managed properly and we find neither an indication of bias nor an error requiring reversal.[13]
The sentence is a different matter altogether. Appellant was sentenced to five years’ imprisonment for each of her wire fraud convictions, which would run concurrently. Appellant was sentenced to twenty years’ imprisonment for each of her two money laundering convictions to run consecutively to her wire fraud convictions. One of her money laundering sentences was suspended, and she was to be placed on probation for five years to commence upon her release from confinement.
This sentence seems excessively harsh. Appellant, a first time offender, was to serve 300 months in prison, followed by five years’ probation, for non-violent white collar crimes. The apparent harshness of the sentence, the essentially unbridled sentencing discretion of Judge Melinda Harmon in this pre-Guidelines ease,[14] the appearance of impropriety, and the allegations by Appellant that her fears of bias were realized in the sentencing requires this Court to vacate the sentence.[15] The integrity of the judicial system needs the rehabilitation that would be gained by vacating the sentence and resentencing Appellant. Affirming the sentence would only compound the damage done.
We embrace the method utilized in United States v. Couch,[16] in dealing with this sensitive situation. In Couch the Chief Judge of the Fifth Circuit assigned the case to a judge outside of the district in which it originated to adjudicate the claims of partiality. Judge Walter confirmed the conviction concluding that no actual partiality existed.[17] However, in order to avoid the appearance of partiality, Judge Walter resentenced the defendant. Although Couch dealt with a habe- *160 as situation, which called for a lesser standard than does our appeal, we nonetheless believe that a similar approach is needed in the case before us. Section 455(a) silently delegates to the judiciary the task of fashioning the remedies that will best serve the purpose of the legislation. Liljeberg, 486 U.S. at 862, 108 S.Ct. at 2204. “The goal of Section 455(a) is to avoid even the appearance of partiality.” Id. at 860, 108 S.Ct. at 2203. In order to serve that goal, in this case, the sentence must be vacated.
Consistent with this opinion, we AFFIRM the conviction, VACATE the sentence, and ask the Chief Judge of the Fifth Circuit to designate a judge outside of the Southern District of Texas to resentence Appellant'and hold any other appropriate proceedings necessary to effectuate this opinion.[18]
AFFIRMED in part, VACATED in part.

. Factoring involves the buying of accounts receivable at a discount and then attempting to collect on these accounts.

. One of the money laundering sentences was later suspended pending five years' probation.

. The dissent contends that Liteky v. United States, — U.S. —, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), has modified this standard to require an “impossibility of fair judgment” test. A thorough reading of the opinion, however, reveals that Liteky has not changed the § 455(a) recusal standard, nor is the impossibility of fair judgment test implicated in the case sub judice, nor is the extension proposed by the dissent warranted. The Supreme Court was faced with the issue of determining whether the “extrajudicial source” doctrine survived the amended version of § 455(a). The traditional meaning of the extrajudicial source doctrine is that a recusal motion must be based on a source outside of the proceedings. To state it in the negative, recusal can not be based on an opinion or bias developed during the course of judicial proceedings. The Court held that while § 455(a) does not require an opinion of a judge to originate from a source outside of the proceedings to create an appearance of impropriety, opinions formed during the proceedings do not constitute a basis for recusal unless the opinion "display[s] a deep-seated favoritism or antagonism that would make fair judgment impossible.” Id. at —, 114 S.Ct. at 1161, 127 L.Ed.2d at 491.
The Court neither stated nor implied that this impossibility of fair judgment test would supplant the reasonable person standard in cases involving alleged bias from an extrajudicial source. The Court found recusal unwarranted in Liteky because "all [the grounds for recusal] occurred in the course of judicial proceedings and neither (1) relied upon knowledge acquired outside such proceedings, nor (2) display deep-seated and unequivocal antagonism that would render fair judgment impossible.” It is clear that if and only if the allegations of bias arose from the proceedings is the impossibility of fair judgment test implicated. In fact, the concurrence criticized the majority for creating a different and more stringent standard for allegations of intra-judicial bias. The concurrence discerned no reason for requiring two different standards, one for the extrajudicial source, and one for the intraju-dicial source of alleged bias.
Moreover, we disagree with the dissent and refuse to extend the impossibility of fair judgment test to situations for which the standard was not designed. To apply this limited standard universally would destroy the § 455(a) appearance of impropriety standard by effectively requiring a showing that the judge actually harbored “deep-seated favoritism or antagonism that would make fair judgment impossible.” The standard for recusal in situations like the case sub judice, continues to be whether a reasonable person, knowing all the facts, would question the judge's impartiality.

. The facts underlying the series of incidents between Michael Wood and Appellant are not crystal clear. Provided in the trial record is Appellant’s affidavit. Additionally, upon request of this Court, the parties supplied us additional information. The facts discussed in this opinion are compiled mainly from the information provided to this Court by the parties on appeal. It is not clear whether Judge Melinda Harmon was aware of the details underlying the incidents between Michael Wood and Appellant. Assuming that Judge Melinda Harmon was unaware of all the facts, however, does not foreclose recusal. We are not asking that the Honorable Judge Melinda Harmon have performed the impossible, that is, to disqualify herself based on some facts she did not know. As Liljeberg has made clear, facts not known at the time of the recusal motion are still considered in determining whether the judge should have been recused. Liljeberg, 486 U.S. at 861, 108 S.Ct. at 2203. Section 455(a) may be applied retroactively by rectifying an oversight and taking the steps necessary to maintain public confidence in the impartiality of the judiciary.

. According to the materials provided by the parties, Appellant's daughter attempted three times to level charges against Michael Wood for the November 21, 1989 incident. However, the DA’s office allegedly lost the first two complaints.

.For example, in Vieux Carre Property Owners v. Brown, 948 F.2d 1436 (5th Cir.1991), the judge had a close personal and political relationship with the Mayor, who had a significant political stake in the outcome of the case. The sole reason urged by Vieux Carre’s motion to recuse was the temporal proximity of the mayoral election and the mootness hearing. Because the district court adequately removed any possible harm from the public’s perception of impropriety by postponing that hearing until after the election, this Court held that recusal was not necessary. See also Henderson v. Dept. of Public Safety, 901 F.2d 1288 (5th Cir.1990) (holding that the appellant’s allegations that the judge has known opposing counsel since he was a kid and were good friends was not sufficient for recusal; "an investigation into the facts would have undermined the tenuous conclusion of bias that even Penn would draw from the hearsay statements upon which he based his motion”).

. The charges were actually brought by Appellant's daughter, but, as the government conceded, the actions of the daughter and Appellant cannot be separated because they acted in concert.

. The government argued that Michael Wood was fully vindicated from the criminal allegations. Therefore, Judge Harmon would not harbor any actual bias against Appellant. We do not contest this. We offer no opinion as to whether Judge Harmon was actually biased; it is the appearance of impropriety with which we are concerned. How many times has one heard the following statement: "He can say anything he wants about me, but he can’t talk about my friend.” Michael Wood may not care what Appellant has said about him, but a good friend may forever harbor animosity against someone who has taken a prominent lawyer and put him through unwarranted criminal proceedings and negative publicity.

. The dissent takes the majority to task for not regurgitating all of this circuit’s jurisprudence on § 455(a), which jurisprudence the dissent views as creating a "continuum.” We discern no such continuum; neither do we find a circuit mandate to imply one. What the dissent actually does is discuss two lines of cases, one requiring recusal, the other affirming the court’s refusal to recuse. The dissent places the facts of this case in the latter line of cases, "especially those concerning involvement of the judge's spouse." We disagree for several reasons. First, we see nothing more than a parsing of our prior cases into two pots, one containing those cases in which an appearance of impropriety was found and the other containing those cases in which such appearance was not found. That is certainly no "continuum”; just an inventory exercise. Next, we believe the facts of the case sub judice fit more closely in the former category. We are not dealing with a judge making minor contributions to a party’s campaign, having a sporadic friendship with counsel, presiding over a case where the judge's spouse was a student at the defendant’s university, or any of the other situations listed in the dissent. The appearance of impropriety is unmistakable in the facts before us. Second, although Judge Melinda Harmon’s spouse was involved in the "situation," that is not the focus of our analysis. Judge Harmon's close friendship with John Wood and his jurist-spouse and the besmirching and vindictive actions taken against him concerns us more than Judge Harmon's husband’s relationship to the incidents. Third, Appellant's liberty is at stake. The integrity of the judiciary is impugned. While the standard of recusal is the same in both civil and criminal cases, we are uncomfortable in blindly relying upon civil cases in determining whether a judge presiding over a felony trial should recuse. Though even the Supreme Court engages in cross-over citations, we must look both ways more carefully when crossing this dangerous street from the civil side to the criminal side than we do when crossing in the opposite direction.

. Because we have determined that the district court breached Section 455(a), we do not reach the issues raised under Section 144.

. See United States v. Ivey, 550 F.2d 243, 244 (5th Cir.) (holding that comments by the prosecution were not improper because they were in response to defense's argument, and an instruction was given), cert. denied, 431 U.S. 943, 97 S.Ct. 2662, 53 L.Ed.2d 263 (1977); United States v. Celcer, 500 F.2d 345, 346-47 (5th Cir.1974) (holding that comment, if error, was rendered harmless by an instruction and charge that the burden was on the government and that the defendant was not under any duty to present evidence), cert. denied, 421 U.S. 911, 95 S.Ct. 1563, 43 L.Ed.2d 776 (1975).

. United States v. Evans, 572 F.2d 455, 490 (5th Cir.) (finding no error when "the district court admitted [a] long series of exhibits together, [providing] it was repeatedly done with the provision that any specific objection that defense counsel desired to raise at a later time regarding a particular exhibit would be entertained”), cert. denied, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978).

. We have considered Appellant’s other points of error, and though we do not find them merit-less, they do not require reversal.

. The fact that the Presentence Report recommended the maximum is not dispositive. The report does not insulate or negate the appearance of impropriety; a reasonable person would question the impartiality of Judge Melinda Harmon.

. Again, we must stress that we are not offering our opinion on whether Judge Melinda Harmon was actually biased; it is the appearance of impropriety and its effect on our judicial system with which we are concerned.

. 896 F.2d 78 (5th Cir.1990).

. As we have done here.

. The dissent, in footnote 21, contends that our remedy implies that disqualification of one judge disqualifies all the judges of that district. This is not the impression we want to leave the reader. If Judge Melinda Harmon had recused herself from the proceedings, another judge of the Southern District of Texas could have easily presided over the case. Because we find the district judge abused her discretion, we want to avoid placing one of her colleagues in the uncomfortable position of effectively passing on her rulings in the sentencing hearing. Moreover, having one of her own colleagues in her district pass on her past actions well might, in and of itself, exacerbate the appearance of impropriety. The public may not look favorably upon a system that allows one colleague to pass on the impartiality of another colleague who works closely with the questioned judge. As discussed supra, judges sitting in review of other judges do not like to cast aspersions, especially upon colleagues in the same district with whom they work so intimately and confer so frequently. Accordingly, we have taken the additional precaution of asking that a judge from another district be appointed to re-sentence Appellant. We are not imputing one judge's disqualification to the district in which she sits; we are taking the proven precaution that we feel is appropriate to handle this particular kind of situation.