**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 97-11205**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**TONY LEROY ANDERSON,**

**Defendant-Appellant.**

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

November 10, 1998

Before REYNALDO G. GARZA, JONES and DeMOSS, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Tony Leroy Anderson appeals his sentence of forty-six months after pleading guilty to one count of bank robbery.  We vacate his sentence and remand for resentencing because we find that the district judge should have recused himself prior to sentencing.

*Factual Background*

On July 11, 1997, Tony Leroy Anderson, pled guilty to one count of bank robbery before the Honorable John McBryde, United

States District Judge for the Northern District of Texas.

During the week of August 25, 1997, Anderson's trial counsel, First Assistant Public Defender Paul D. Strickney, was subpoenaed as a witness, and testified against Judge McBryde in proceedings before a special investigatory committee of the Fifth Circuit Judicial Council. On October 9, 1997, one day prior to sentencing, Anderson moved for recusal of Judge McBryde and reassignment of the case to another district judge. Judge McBryde denied the recusal motion on the ground that these facts did not create an appearance of bias or prejudice against Anderson or his counsel.

Neither the government or Anderson objected to the presentence report (PSR), and the district court adopted the PSR's factual findings and conclusions. The PSR noted that the maximum punishment was 20 years and calculated the guideline range to be 37 to 46 months. On October 10, 1997, Anderson was sentenced by Judge McBryde to 46 months imprisonment, followed by three years of supervised release. Anderson then timely appealed to this Court.

## II. Discussion

Anderson does not challenge his conviction. His appeal requests that his sentence be vacated and that the case be remanded for resentencing before a different district court judge. Anderson contends that Judge McBryde abused his discretion and reversibly

2

erred by refusing to recuse himself from Anderson's case after Anderson's attorney testified against Judge McBryde in the Fifth Circuit Judicial Council proceedings.  Anderson asserts that a reasonable person would harbor doubts about Judge McBryde's ability to remain impartial in a case involving an attorney who had testified adversely to Judge McBryde in Judicial Council proceedings that could lead to him being reprimanded or even sanctioned.  We find Anderson's contentions valid.

Title 28 U.S.C. § 455(a) provides that a federal judge shall disqualify himself in any proceeding in which his impartiality might be reasonably questioned.  A motion for recusal is within the discretion of the district judge and the denial of such a motion will not be reversed on appeal unless the judge has abused his discretion. *Garcia v. Woman's Hosp. of Texas*, 143 F.3d 227, 230 (5th Cir. 1998).

This Circuit has recognized that each section 455 (a) case is extremely fact intensive and fact bound, and must be judged on its unique facts and circumstances rather than by comparison to similar situations considered in prior jurisprudence.  *United States v. Jordan*, 49 F.3d 152, 157 (5th Cir. 1995).  The party seeking recusal must demonstrate that, if a reasonable person knew of all of the circumstances, they would harbor doubts about the judge's impartiality. *Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*, 38 F.3d 1404, 1408 (5th Cir. 1994). Thus, if a judge concludes that his

3

impartiality might be reasonably questioned, then he should find that the statute requires his recusal. *In re Faulkner*, 856 F.2d 716, 721 (5th Cir. 1988) (citing *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860 (1988)). The goal of section 455(a) is to avoid even the appearance of partiality. *Liljeberg*, 486 U.S. at 860. In light of the specific facts of this case we hold that the Judge McBryde abused his discretion and reversibly erred in failing to recuse himself from Anderson's case. It is clear that a reasonable person, when appraised of the relevant circumstances that surround this case, would harbor doubts about Judge McBryde's impartiality. The average person when viewing this specific situation, would question Judge McBryde's ability to be impartial in a case involving an attorney who has testified adversely against Judge McBryde in a Judicial Council proceeding. As Anderson notes many attorneys are fearful of even filing a complaint against a judge to a circuit judicial council, due to fear of retaliation from that complained-against judge. If there is a fear in merely filing a complaint against a judge, it is evident that a greater fear arises from actually testifying against a judge, who is present at that hearing. It is difficult under these circumstances to argue that a reasonable person would not harbor any doubt about Judge McBryde's impartiality. This Court recognizes that it is essential to avoid even the appearance of impropriety because it is as important in developing the public confidence in our judicial system

4

as avoiding the impropriety itself. *Jordan*, 49 F.3d at 155-56.

On February 9, 1998, the Fifth Circuit Judicial Council issued an order making executory that portion of a Judicial Council Order of December 31, 1997 ordering Judge McBryde not to participate in cases involving attorneys who have testified against him for a period of three years. Although not dispositive, this demonstrates that a group of Judge McBryde's own colleagues have concluded that there is reasonable doubt of Judge McBryde's ability to be impartial arising from an attorney's testifying against him.

Section 455 also obligates a party to raise the disqualification argument at a reasonable time in the litigation. *Hollywood Fantasy Corp. v. Gabor*, No. 93-8199, 1998 WL 469672, at *14 (5th Cir. 1998). Moreover, the party seeking the "disqualification must do so at the earliest moment after knowledge of the facts demonstrating the basis of such disqualification." *Travelers Ins. Co.*, 38 F.3d at 1410. In addition, "when a party seeking recusal knows or should know the facts on which recusal is based he must make a timely motion to disqualify or lose his right to do so. *Health Services Acquisition Corp.* v. *Liljeberg*, 796 F.2d 796, 802 (5th Cir. 1986) *aff'd*, 486 U.S. 847 (1988).

This Court finds that Anderson's motion for recusal was timely. Anderson pled guilty to bank robbery and only challenges the sentence imposed by Judge McBryde. Anderson made his motion for recusal one day prior to sentencing, but had known of his attorney's

testimony against Judge McBryde for over six weeks. Although Anderson knew of the basis for the recusal for a considerable time, this Court finds that Anderson raised Judge McBryde's disqualification at a reasonable time. It is clear that Anderson did not wait to see what sentence Judge McBryde would impose, and then, when that sentence was unfavorable, move for recusal. Rather, Anderson raised the ground for recusal before any sentence was imposed. There was no litigation concerning Anderson's guilt, all that remained to be determined was the duration of his sentence. Therefore, because Anderson filed his motion to recuse prior to sentencing, we find that the motion is timely in challenging his sentence.

This Court also holds that Anderson's recusal motion is reasonably specific, because under the Fifth Circuit Rules Governing Complaints of Judicial Misconduct or Disability, Anderson's attorney was prohibited from discussing the content of the testimony given at the proceedings. Moreover, Judge McBryde was either present at the proceedings or had access to a transcript of Anderson's attorney's testimony. Thus, Judge McBryde was fully aware of the particular grounds provided as requiring recusal.

Accordingly, Anderson's SENTENCE is VACATED and his case REMANDED for reassignment to a different judge for proceedings consistent with this opinion.

ENDRECORD

EDITH H. JONES, Circuit Judge, dissenting:

Tony Leroy Anderson and Ricardo Avilez-Reyes, represented by the Federal Public Defender's Office, pleaded guilty, respectively, to bank robbery and possession with intent to distribute methamphetamine. Between their plea agreements and sentencing hearings, a unique event occurred. The district judge responsible for their cases was brought before a judicial conduct and disciplinary hearing convened by the Fifth Circuit Judicial Council. In that hearing, the attorneys who testified against the Honorable John McBryde were predominantly government lawyers: six current or former lawyers from the United States Attorney's Office in the Northern District of Texas, five from the Federal Public Defender's Office.[1] Because the Chief Judge of this circuit has refused to make the records of the disciplinary hearing public,[2] we do not know what testimony was presented or by whom.[3] Nevertheless, the federal public defenders who represented these defendants sought Judge McBryde's recusal from sentencing because they themselves testified against him at the hearing. The judge denied their motions. Both defendants were sentenced within the applicable

---

[1] The attorney-witnesses against Judge McBryde are listed in McBryde's Memorandum at 8-10.

[2] See 28 U.S.C. § 372(c)(14)(C). Judge McBryde requested publication of all the proceedings, but the Chief Judge exercised his unilateral prerogative to deny that request.

[3] One member of this panel was on the Judicial Council at the time of the hearing but was not a direct participant in the hearing.

7

Guidelines ranges and raise as their only appellate point the denial of recusal.

My colleagues hold that Judge McBryde should have recused and, further, that defendants' sentences are vacated. I respectfully dissent. My colleagues' interpretation of § 455(a) in these cases conflicts with our precedents and, by unnecessarily provoking more motions and requiring more recusals, will create serious problems for the efficient administration of justice in the federal courts. In addition, they engage in no analysis of the remedy, although sentencing the defendants was harmless error in these cases. Finally, their decisions unfairly pile on the punishments that have already been imposed on Judge McBryde by the Fifth Circuit Judicial Council.

**I.**

The panel's principal error is to review Judge McBryde's recusal decision only in hindsight. The defendants' recusal motions must be viewed in terms of events as the parties knew them at the time. The public defenders had testified against Judge McBryde and the disciplinary hearing was over, but no decision had yet been rendered. The potential seriousness of the proceeding was beyond dispute, but at that stage, particularly given the novelty of the proceeding, its outcome could hardly have been foreseen. There is no reason to think that Judge McBryde would have had it in for the clients of people who were testifying against him. Every judge must

develop a thick skin against criticism, and most judicial conduct complaints come to nought. A reasonable person, knowing all the circumstances, would not have had reason to doubt the judge's impartiality toward these defendants. See In re Hipp, Inc., 5 F.3d 109, 116 (5th Cir. 1993).

The public defenders were not responsible for convening the hearing. There is no meaningful distinction between their testimony against Judge McBryde in the hearing and lawyers' publicly questioning a presiding judge's impartiality or ability to handle a case.[4] Yet the impact of this criticism is treated differently by the panel, apparently because it later resulted in sanctions against Judge McBryde.

The panel's unwarranted and stringent standard for recusals will hinder the effective administration of justice. Although courts must be mindful that maintaining the appearance of partiality is at least as important as its actuality, federal judges equally have a duty to sit on cases properly before them. See In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1312 (2d Cir. 1988) ("A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is."); Hinman v. Rogers, 831 F.2d 937, 939 (10th Cir. 1987) ("There is as much obligation for a judge not to recuse when there is no occasion for him to do so as

---

[4] In fact, the disciplinary hearing testimony was in one regard even less threatening than garden-variety public criticisms because the proceedings were held in secret and could not be made public without Judge McBryde's consent.

there is for him to do so when there is."). They must not cower before heavy-handed attempts to stifle their independence by false attacks on their integrity.

The panel's opinion raises at least three sets of problems. First, these federal public defenders essentially assert that the judge could not be impartial to their clients because of what they (the lawyers) did to him, which they allege created an extrajudicial source of influence or prejudice. Does this suggest that any aggressive lawyer who faces the prospect of a trial before a judge he dislikes could file a spurious misconduct complaint against the judge, give an unflattering interview to the press, or otherwise publicly rebuke the judge, and then seek his recusal? In fact, "courts have typically rejected recusal motions based on ... a litigant's deliberate act of criticizing the judge or judicial system." United States v. Owens, 902 F.2d 1154, 1156 (4th Cir. 1990). The First Circuit once repeated Judge Charles Wyzanski's colorful comments on such a situation: "[I]t rather surprises me that a person has any status at the end of the first half of the game to suggest that the referee, who was qualified at the beginning, is disqualified at the middle because in the meantime the player has been cursing the referee outside of court." In re Union Leader Corp., 292 F.2d 381, 388 (1st Cir. 1961). See also 13A Charles Alan Wright et al., Federal Practice and Procedure § 3542, at 577-78 (2d ed. 1984) ("A party cannot force disqualification by attacking the judge and then claiming that these attacks must have

caused the judge to be biased against him ....").

Second, there is even less reason to think that a judge would react impartially to a defendant represented by the Federal Public Defender's Office. The judge knows that the client had no choice of counsel and that no significant "punishment" could be inflicted on counsel by treating the criminal defendant unfairly. Moreover, the general rule is that disqualification motions should focus on the appearance of partiality against the party, not counsel. See Davis v. Board of Sch. Comm'rs, 517 F.2d 1044, 1050, 1052 (5th Cir. 1975); see also 13A Federal Practice and Procedure § 3542, at 575-76. That rule has passed unnoticed by the majority.[5]

Third, the panel's reasoning provides no basis for believing that attorneys who testified in favor of Judge McBryde should be treated differently from those who testified against him. Partiality includes favoritism for, as well as antipathy against, a party. If a judge cannot be supposed to be impartial toward those who testified against him, how could he not be equally grateful to -- and favorably disposed toward -- any attorneys who testified on his behalf?

The panel's holding will allow some attorneys to get unfavorable judges disqualified from their cases. Simultaneously,

---

[5] The rule is a general one with exceptions. Potashnick v. Port City Constr. Co., 609 F.2d 1101 (5th Cir. 1980), for example, found the judge's prior contacts with the plaintiff's attorney justified disqualification, but it involved much more egregious circumstances than these cases.

11

it will eliminate incentives for other attorneys to stand up for a judge once allegations of misconduct are lodged against him, for fear of having him disqualified from their future cases. This is nothing short of perverse and cannot be what Congress contemplated when it created § 455(a).

Where recusal could lead to so many problems and where Judge McBryde was necessarily unaware of the ultimate conclusion of the disciplinary proceeding, I would hold that it was not an abuse of discretion for Judge McBryde not to recuse.

**II.**

Even if Judge McBryde's failure to recuse himself were error, it would be harmless error. My colleagues conclude summarily that the error is "reversibl[e]" in both cases. Their method ignores the Supreme Court's approval of harmless error analysis in the § 455(a) context. See Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 862, 108 S. Ct. 2194, 2203-04 (1988) ("There need not be a draconian remedy for every violation of § 455(a).").

This court has generally applied a three-prong harmless error test after finding a § 455(a) violation. See, e.g., United States v. O'Keefe, 128 F.3d 885, 892 (5th Cir. 1997), cert. denied, 118 S. Ct. 1525 (1998); Air Line Pilots Ass'n, Int'l v. Continental Airlines, Inc. (In re Continental Airlines Corp.), 901 F.2d 1259, 1263 (5th Cir. 1990). That test involves weighing "(1) the risk of injustice to the parties in this particular case, (2) the risk that

12

denial of relief will produce injustice in other cases, and (3) the risk of undermining the public's confidence in the judicial process." O'Keefe, 128 F.3d at 891. The full analysis shows that the sentences here were harmless error.

The risk of injustice to the parties is mitigated by the appellate court's ability to review the challenged decision. Here, no abuse of discretion in sentencing is alleged, and in fact, no error at all is alleged in regard to the guilty pleas or sentences other than failure to recuse. The parties' rights were inherently protected from arbitrariness by the Sentencing Guidelines. The mere fact that the judge sentenced defendants beyond the minimum of the Guidelines ranges does not imply partiality. Given the easily articulable explanations for greater-than-minimum sentences, it cannot be said that defendants have suffered prejudice. In Anderson's case, especially, there was no hint of prejudice: the Guidelines range was narrow (only nine months' variation) and the probation officer had recommended an upward departure because Anderson carried his two-year-old son in his arms as he robbed a bank. In Avilez-Reyes's case, the Guidelines range was broader, but Avilez-Reyes was sentenced in the lower half and there was evidence to show that he had possessed more than 1.7 kilograms of methamphetamine. Allowing these sentences to stand creates no significant risk of injustice to the parties in these cases.

There is also no risk of injustice in future cases because, if the Judicial Council's order stands, Judge McBryde is

13

required to recuse from cases involving these attorneys for three years. Furthermore, assuming, as the majority does, that there is a § 455(a) violation here, district judges will not fail in the future to recuse themselves from cases involving attorneys who testify against them in judicial disciplinary proceedings. Cf. O'Keefe, 128 F.3d at 893 ("our decision aids ... justice in other cases because it clarifies an unclear area of the law and serves as a caution to district court judges"); O'Neill v. Continental Airlines, Inc. (In re Continental Airlines), 981 F.2d 1450, 1463 (5th Cir. 1993); Air Line Pilots, 901 F.2d at 1263 ("rather, our ruling here should serve as a caution to other judges [in the same situation]").

Finally, there is little risk that public confidence in the judicial process would be undermined by allowing the defendants' sentences to stand. The Judicial Council's much publicized order should reassure the public that Judge McBryde cannot visit retaliation upon those who testified against him. In these cases, to the contrary, only a legal technicality can cause that fear of retaliation to "relate back" to the beginning of the disciplinary proceedings, when it was not clear that the public defenders' testimony had more weight than any other out-of-court criticisms or defenses of the judge. It is likely that the public will see the panel's needless vacatur of the defendants' sentences as a strike against the judicial process. Cf. O'Keefe, 128 F.3d at 893 ("decisions that are based on technicalities and do not reach the

14

merits of the case increase public distrust of the legal system").

Thus, under the three-prong harmless error analysis, these sentences should stand.

Even in <u>Jordan</u>, a case relied upon by my colleagues, the court weighed different remedies,[6] ultimately refusing to reverse a conviction but vacating an "excessively harsh" sentence. <u>United States v. Jordan</u>, 49 F.3d 152, 158-59 (5th Cir. 1995). In vacating the sentence, the <u>Jordan</u> court highlighted both its "apparent harshness" and the judge's "unbridled sentencing discretion ... in [that] pre-Guidelines case." <u>Id.</u> at 159. By contrast, Judge McBryde sentenced the defendants in these cases within the Guidelines, and, as discussed above, there can be no argument that his sentences were harsh. No abuse of the sentencing prerogative has been alleged by either defendant.

## III.

The panel's decisions in these cases needlessly pile on the prior actions of the Judicial Council of the Fifth Circuit, which has publicly reprimanded Judge McBryde and subjected him essentially to a temporary impeachment. Not only did the Council hold that the judge may be assigned no new cases for one year, but it also purported to require Judge McBryde, for three years after February 6, 1998, to recuse from all matters in his court involving

---

[6] The <u>Jordan</u> court did not apply the three-prong test that other Fifth Circuit panels have used, but it did touch on many of the same concerns.

15

attorneys who testified against him in the disciplinary proceeding (including the federal public defenders in these two cases). The propriety of the Council's order is not an issue in these cases and should not be a basis for the majority's decision. But whatever the order's propriety, it is an entirely different matter to "sanction" Judge McBryde by enforced recusal after the disciplinary proceedings have been concluded, than it is to use that sanction as a basis for challenging his impartiality in decisions he made before the outcome of the proceedings had been determined. Many accusations and charges were made against Judge McBryde, the exact substance and nature of which are unclear, unspecified in the public record, and unknown even by most members of the Fifth Circuit.[7] Nevertheless, as far as I am aware, no one has ever questioned Judge McBryde's integrity or his ability to render decisions impartial to the

---

[7] In the lawsuit Judge McBryde has filed in the District Court for the District of Columbia, he characterizes the testimony against him as having focused on the following topics:

> Judge McBryde's imposition of sanctions for litigation misconduct; his decisions to reject plea agreements; his practices with respect to settlement conferences; his criticisms of attorneys for lack of good faith compliance with rules and orders; his rulings in the Satz and Torres cases; and his procedural rulings at trial, such as the time allotted for opening statements and his rulings cutting off repetitive questioning.

Complaint ¶ 43, McBryde v. Committee to Review Circuit Council Conduct and Disability Orders, No. 1:98CV02457 (D.D.C).
Judge McBryde's rulings in the Satz and Torres cases were at the genesis of the judicial conduct proceeding. Judge McBryde's authority to make those rulings was upheld by this court in In re McBryde, 117 F.3d 208 (5th Cir. 1997), cert. denied, 118 S. Ct. 2340 (1998).

16

parties before him.  If anything, the substance of the allegations against him concerned alleged abuse of <u>all</u> lawyers appearing in his court.  Ironically, what is public is that one of the initial charges against Judge McBryde, later apparently dropped, was that he investigated too vigorously the actions of the government in regard to a criminal defendant and intervened too actively to protect the defendant's rights.

Our court would be better off and would itself look more impartial if we simply applied our pre-existing precedents to these cases and affirmed the appellants' sentences as having been imposed well within the guidelines set by Congress through the United States Sentencing Commission.

I respectfully dissent.