[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTIONS FOR RECUSAL
The plaintiff in the above two actions has filed identical motions for recusal alleging as follows:
 The plaintiff moves that the following judges presently assigned to the Danbury Superior Court be ordered recused from proceedings in this case because of the appearance of their involvement in a judicial vendetta which targets the plaintiff, her family, and her clients: Hons. Moraghan, Radcliffe, Carroll and Axelrod. This motion is compelled by fundamental notions of due process.
This memorandum is addressed to the motion for recusal in each case as it relates to this judge. This court has relied upon two cases in determining what the standard is to determine whether disqualification is justified. The first is Abington Ltd.CT Page 1217Partnership v. Heublein, 246 Conn. 815 (1998) where the court in describing what constitutes a significant risk of a judicial impropriety stated both in footnote 15 and on page 826 in part as follows:
 A reasonable observer is unconcerned about trivial risks; there is always some risk, a probability exceeding 0.0001%, that a judge will disregard the merits. Trivial risks are endemic, and if they were enough to require disqualification we would have a system of preemptory strikes and judge-shopping, which itself would imperil the perceived ability of the judicial system to decide cases without regard to persons. A thoughtful observer understands that putting disqualification in the hands of a party, whose real fear may be that the judge will apply rather than disregard the law, could introduce a bias into adjudication. Thus the search is for a risk substantially out of the ordinary. (Emphasis in original.) In the Matter of Mason, 916 F.2d 384, 386 (7th Cir. 1990).
 Although each case of alleged judicial impropriety must be evaluated on its own facts, the considerations that we have found decisive are similar to those articulated in cases in other jurisdictions. Some of the significant state court cases are reviewed in In re Inquiry Concerning a Judge, supra, 788 P.2d 722-23. At least since the decision of the United States Supreme Court in Liljeberg v. Health Services Acquisition Corp., supra, 486 U.S. 860-61, federal courts have ruled to the same effect. See, e.g., United States v. Jordan, supra,
49 F.3d 156-57.
The Abington court went on to state that what should be considered is "the totality of the circumstances."
The issue of judicial disqualification was also recently discussed in the case of Liteky v. United States, 510 U.S. 540,127 L.Ed. 474, 114 S.Ct. 1147 (1994), where the court stated in part at pages 490, 491, 492 as follows:
 First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. See United States v. Grinnell Corp., 384 US, at 583, 16 L Ed 2d 778, 86 S Ct 1698. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest CT Page 1218 circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. . . .
 Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration — even a stem and sort-tempered judge's ordinary efforts at courtroom administration — remain immune.
 Applying the principals we have discussed to the facts of the present case is not difficult. None of the grounds petitioners assert required disqualification. As we have described, petitioners' first recusal motion was based on rulings made, and statements uttered, by the District Judge during and after the 1983 trial; and petitioner Bourgeois' second recusal motion was founded on the judge's of Bourgeois' counsel and codefendants. In their briefs here, petitioners have referred to additional manifestations of alleged bias in the District Judge's conduct of the trial below, including the questions he put to certain witnesses, his alleged "anti-defendant tone," his cutting off of testimony said to be relevant to defendants' state of mind, and his post-trial refusal to allow petitioners to appeal in forma pauperis.
 All of these grounds are inadequate under the principles we have described above: They consist of judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses. All occurred in the course of judicial proceedings, CT Page 1219 and neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible.
The claims of judicial vendetta against this court fall into the following general categories:
1. The plaintiff recites a litany of claims that she has against other judges.
2. The plaintiff claims that she did not understand that she would be required by this court to give a sworn statement regarding her claim against this court of a judicial vendetta.
3. The plaintiff recites the fact that this court, in a prior case, denied her motion to postpone the trial.
These claims will be considered seriatim:
 I THE LITANY OF CLAIMS THAT THE PLAINTIFF RECITES THAT SHE HAS AGAINST OTHER JUDGES
Attorney Burton filed a motion to disqualify this court in the case of Gereg v. Brookfield Water Pollution Authority, Docket No. 314677. The motion to disqualify by her in that case dated June 10, 1998, alleged as follows:
 The Plaintiff herewith respectfully moves that the Hon. Sidney Axelrod be disqualified from presiding over trial and other proceedings in the above-captioned action.
 The Plaintiff respectfully submits that Judge Axelrod has manifested clear hostility toward Plaintiff's counsel; that he has grossly abused her fundamental Constitutional rights as an attorney and as a human being and as a woman; and that he has grossly abused her clients in their exercise of fundamental Constitutional rights.
 Accordingly, the Plaintiff has no reasonable cause for belief that her rights and interests will be protected in this action if Judge Axelrod presides, and that such infringement implicates her fundamental Constitutional rights.
CT Page 1220 In response to Attorney Burton's request that this court articulate the reasons why the court denied the plaintiff's motion for disqualification, this court's Articulation dated August 20, 1998 stated in part at pages 9 and 10 as follows:
 Attorney Burton apparently believes that because of pending litigation and other disputes that she has with other judges in this Judicial District, that such litigation and disputes disqualify this judge.
 This court will not attempt to review Attorney Burton's disputes that have involved and still involve other judges in the Danbury Judicial District. This court is not aware of any claim by Attorney Burton against any judge who has sat in the Danbury Judicial District that has been ruled in her favor when heard on appeal. Those pending claims are best left for a different forum. However, to the extent that she claims that because of disputes that she has with other judges, that this judge is thereby disqualified from presiding over any of her cases, the court finds that that argument, at best, is not valid. There is no evidence whatsoever that this court has manifested any "clear hostility towards plaintiff's counsel." There is no evidence whatsoever that this court has grossly abused Attorney Burton in her fundamental constitutional rights as an attorney, and as a human being, and as a woman. There is no evidence whatsoever that this court has grossly abused Attorney Burton's clients in their exercise of fundamental constitutional rights.
This court again repeats that whatever pending alleged disputes Attorney Burton may have against any other judge assigned to this district is not grounds to disqualify this judge. As a matter of fact, in again repeating her litany of claims against other judges currently and previously assigned to the Danbury Judicial District in the hearing before this court on November 9, 1999, Attorney Burton still is unable to even raise a claim that any of her disputes have ever been ruled in her favor against other judges.
 II THE PLAINTIFF CLAIMS THAT SHE DID NOT UNDERSTAND THAT SHE WOULD BE REQUIRED BY THIS COURT TO GIVE A SWORN STATEMENT REGARDING HER CLAIM AGAINST THIS COURT OF A JUDICIAL VENDETTA
CT Page 1221
This is not the first time the plaintiff, Nancy Burton, has filed a motion to disqualify this judge in the case of Burton v.Dimyan, Docket No. 318006 on the grounds of an alleged appearance of a judicial vendetta. This court held a hearing on October 14, 1997 arising out of a motion filed by the plaintiff dated April 29, 1997 to disqualify six named judges, including this judge, from participating in the Burton v. Dimyan, proceeding because of an appearance of a judicial vendetta by this court. This court required the plaintiff in that case to give a statement under oath on October 14, 1997 as to the facts that support her claim of an appearance of a judicial vendetta by this judge. In hearing the present motion to disqualify on November 9, 1999, and requiring that the plaintiff again give a statement under oath as to what the facts were that form the basis of an appearance of a judicial vendetta by this judge, Attorney Burton stated in part on page 29 of the November 9, 1999 transcript as follows:
 So I will ask that the — I guess I could ask that the proceedings be continued so that I — I didn't understand that Your Honor would be expecting a sworn statement.
The court finds it difficult to understand why Attorney Burton would not expect this court to require her to give a sworn statement as I have required her to do so in other proceedings including the first time that her motion to disqualify this judge in this same case of Burton v. Dimyan was heard on October 14, 1997. In the October 14, 1997 proceeding, Attorney Burton stated under oath in part as follows on page 4 and 5 of the transcript October 14, 1997:
 This case, Burton versus Dimyan is not a family matter at all and I can see from the crowds gathered here this morning that Your Honor must be very busy indeed as the Judge assigned to domestic cases in this courthouse and I must ask why this case seems to be taking precedence and interfering with the time of others here who are at family proceedings on this calendar morning in Danbury on a motion that no party has reclaimed other than for some reason that doesn't appear to be obvious or proper.
 So, I would say Your Honor that this motion to disqualify given the date of it is no longer a valid motion. It's a stale motion and furthermore, the plaintiff isn't — hasn't taken any steps to pursue it at this time. This case hasn't been assigned Your Honor. Why should the plaintiff move to disqualify Your CT Page 1222 Honor from this case when Your Honor is assigned to the family docket in this Courthouse and there are Judges assigned to the civil docket who are available?
 So, what frankly, Your Honor, is going on? If it were to be the case that this case were assigned to Your Honor, then it would be appropriate if the plaintiff felt that the facts and circumstances justified it at that time to move for a disqualification but the plaintiff isn't doing that at this time Your Honor.
In the proceeding before this court on November 9, 1999, Attorney Burton again raised the question of why her motion to disqualify was scheduled to be heard on November 9, 1999 where there was not a pending motion through the short calendar to bring her motion before this court.
Whenever an attorney raises a claim of disqualification against this court without filing a sworn statement as required by Practice Book § 1-23, this court takes a position that it has a right to bring before this court the attorney making that claim and requiring the attorney to state under oath what the alleged factual basis for the disqualification consists of. Every time that Attorney Burton has been required to give a statement under oath as to what the factual basis for the disqualification of this court consists of, it turns out that the claims of disqualification consists of nothing more but smoke and mirrors.
 III THE PLAINTIFF RECITES THE FACT THAT THIS COURT, IN A PRIOR CASE, DENIED HER MOTION TO POSTPONE THE TRIAL
It is true that in the case of Aldridge v. Johnson, et al., Docket No. 91030455, this court denied Attorney Burton's motion to postpone the trial.
The fact that this court denied Attorney Burton's motion to postpone the trial in Aldridge v. Johnson, was one of the claimed grounds for disqualification of this court raised by Attorney Burton in the case of Gereg v. Brookfield Water PollutionAuthority. This court denied Attorney Burton's motion for disqualification in the Gereg case on June 10, 1998. This court filed an Articulation on August 20, 1998 that stated the reasons why this court denied Attorney Burton's motion to disqualify and CT Page 1223 stated in part at page 5 of the Articulation as follows:
 If, in fact, a trial court is required to be disqualified in any matter as a result of having previously ruled against an attorney, either for continuation of a trial or on any other such motion, then our court system would come to a grinding halt. On a typical short calendar, the trial court is ruling on motions for and against one party at all times. Such rulings do not give rise to a claim of the judge's impartiality. The guarantee of a fair and impartial trial does not give to a litigant the right to pick and choose what judge should try the case in question by filing a false and groundless motion to disqualify against any other judge assigned to try the case.
What was said in the Liteky v. United States case bears repeating, namely:
 First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion . . . in and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial sources are involved. Almost invariably, they are proper grounds for appeal, not for recusal.
This court again rules as I ruled in Gereg v. Brookfield WaterPollution Authority that Attorney Burton's claim of a judicial vendetta by this court arising out of a denial of her to postpone the trial in both Aldridge and Gereg does not constitute a valid basis for recusal.
In an appearance before this court on November 9, 1999, Attorney Burton stated in her sworn statement in part on page 9 of the transcript as follows:
 As Your Honor doubtless recalls, our expert was not available for trial insofar as we were called in for trial on very short notice which Mr. Gereg, Richard Gereg, the son of the named plaintiffs, appeared here extensively to testify under oath that, in his experience, and he has had significant experience in this Court in litigation, it had never been his experience that a case was called to trial under those circumstances with such short notice. I think it was ten days; I could be CT Page 1224 mistaken. In any event, during that period of time, it was not possible to contact the expert and he was not able to come to the proceedings, although — because he had other scheduled proceedings, and we, therefore, requested a continuance. . . .
The following are excerpts from the transcript of the proceeding of Gereg v. Brookfield on June 10, 1998 when Attorney Burton attempted to postpone the trial.
On page 16 of the June 10, 1998 transcript, the testimony of the Richard Gereg, the son of the plaintiffs, was in part as follows:.
 A What I — When you notified me that the trial was about to be heard this Wednesday and that would have been on Friday that I was — received word from you. I was bewildered, and I — I really did not understand how that had come to be.
 Also, it made it apparent that were we to attempt to assemble our experts or whatever, we'd have to do so in a tell now fashion without regard to their schedules, and as it turned out, the schedule of the expert appraiser, Richard Ferrarone, was such that he was unable to meet with us and/or go over the material, visit the site, and review things in a proper manner. He had to say that he could not respond to this schedule when I reached him on Monday. [Emphasis provided.]
Further, Attorney Burton in arguing that the court should grant the continuance in Gereg stated in part at page 22 of the June 10, 1998 transcript as follows:
 Now, the fact is, though, that Mr. Ferrarone isn't available to be here today. When the notice came from the Court, an effort — last week, an effort was made last week to get in touch with him. He was not available. He was out of town. He didn't first become — He didn't become aware of this trial notification date until Monday, at which time he explained that there were several problems that he had. One was that he had a heavy schedule of obligations that he couldn't expect to be able to get out of. [Emphasis provided.]
It is clear from the above June 10, 1998 transcript, that the plaintiff's expert was contacted but simply did not want to rearrange his schedule to appear in court to testify. It is also clear that Attorney Burton's sworn statement before this court on CT Page 1225 November 9, 1999, that "it was not possible to contact the expert" can best be described as factually inaccurate.
This court again repeats the statement it made in the Articulation in Gereg dated June 20, 1998, namely, that our judicial system cannot be controlled by litigants or their attorneys. Judges must not allow themselves to be removed from a trial simply to avoid facing head on a false and groundless motion for disqualification. In the event any further motion for disqualification of this court is filed by Attorney Burton, this court will expect Practice Book § 1-23 to be complied with.
 ORDER
The motion for recusal is denied.
Axelrod, J.