# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-2384

_____

Naomi Isaacson,

*Plaintiff - Appellant,*

v.

Nauni Jo Manty,

*Defendant - Appellee.*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: December 12, 2012
Filed: July 19, 2013

_____

Before LOKEN, MELLOY, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Naomi Isaacson was sanctioned by the United States Bankruptcy Court for the District of Minnesota for making factually unsupported and harassing statements in documents filed with the court. Isaacson appeals, arguing principally that the bankruptcy judge's failure to recuse herself from the sanctions proceedings violated Isaacson's rights under the Due Process Clause of the Fifth Amendment. We affirm.

I.

Isaacson is the president of Yehud-Monosson USA, Inc., a New York corporation that filed a petition for relief under Chapter 11 of the Bankruptcy Code in the Southern District of New York. The bankruptcy case was transferred to the District of Minnesota and converted to a Chapter 7 proceeding.

A discovery dispute arose between the Chapter 7 trustee, Nauni Manty, and Isaacson. Manty asserted that Isaacson had not turned over certain documents and filed a motion for turnover. The court granted Manty's motion and entered a turnover order stating that if Isaacson failed to turn over certain materials and Manty filed an affidavit identifying those materials, then the court would "issue the appropriate sanctions against Naomi Isaacson for her failure to comply with this court's order, which may include monetary sanctions and/or a finding of contempt punishable by arrest and incarceration." Manty then filed an affidavit of noncompliance. The bankruptcy judge who had issued the turnover order recused himself, and the case was reassigned to a new judge.

Manty filed a motion for contempt, and the hearing on that motion was continued and rescheduled for December 6. On November 17, 2011, the new bankruptcy judge[1] issued an order requiring Isaacson to appear at the December 6 hearing, because contempt was sought against her personally rather than against the debtor. On November 25, Isaacson moved to vacate the order and filed a memorandum in support of her motion. In that memorandum, Isaacson leveled accusations of bigotry, prejudice, and conspiracy against both bankruptcy judges, trustee Manty, the United States trustee, and the entire judicial system. Among other things, Isaacson referred to the new bankruptcy judge as a "black-robed bigot" and

_____

[1] The Honorable Nancy C. Dreher, late a United States Bankruptcy Judge for the District of Minnesota.

"Catholic Knight Witch Hunter," described Manty's "track record of lies, deceit, treachery, and connivery," called the United States trustee a "priest's boy," accused the judge and trustees of *ex parte* communications, and declared that "[a]cross the country the court systems and particularly the Bankruptcy Court in Minnesota, are composed of a bunch of ignoramus, bigoted Catholic beasts that carry the sword of the church."

At a November 29 hearing on the motion to vacate, Isaacson's attorney acknowledged that Isaacson had written the memorandum. The court denied the motion to vacate. Isaacson did not appear as ordered at the December 6 contempt hearing, and the court issued an order finding Isaacson in civil contempt for her failure to comply with the turnover order and for her failure to appear. The order provided that Isaacson could purge herself of the contempt for failure to comply by turning over certain documents to Manty, and of the contempt for failure to appear by appearing at a hearing on January 4, 2012.

The bankruptcy court also *sua sponte* issued an order to show cause related to Isaacson's November 25 memorandum. The court identified ten "unsupported" and "outrageous" statements, and ordered Isaacson and her attorney to appear at the January 4 hearing to show cause why sanctions should not be imposed against each of them pursuant to Federal Rule of Bankruptcy Procedure 9011, which closely tracks Federal Rule of Civil Procedure 11. *See Snyder v. Dewoskin* (*In re Mahendra*), 131 F.3d 750, 759 (8th Cir. 1997). The order stated that sanctions may include monetary fines of $1,000 for each factually unsupported statement.

Isaacson's written response to the order to show cause defended the veracity of all statements in her November 25 memorandum and made similar statements anew. Among other statements, Isaacson explained that her description of the bankruptcy judge as a "Catholic judge" did not refer to the Roman Catholic Church, but rather to "a mentality and an adherence to a universal creed of White Supremacy."

Isaacson then failed to appear at the January 4 hearing. The bankruptcy judge ruled that Isaacson had violated Federal Rule of Bankruptcy Procedure 9011(b)(1) and (3), and imposed a $500 sanction per "outrageous" statement in the November 25 memorandum, for a total penalty of $5,000 payable to the clerk of the court.

The district court,[2] applying Rule 9011, affirmed the sanctions, and Isaacson appeals. She argues that the $5,000 penalty payable to the court constitutes a criminal penalty, and that criminal sanctions proceedings require heightened procedural protections not employed in this case—specifically, recusal of the bankruptcy judge who imposed the sanctions. She also argues that the bankruptcy court abused its discretion in determining the amount of the monetary sanctions.

II.

A.

Before reaching the merits, we must first consider our jurisdiction over this appeal. The Supreme Court held in *Cunningham v. Hamilton County, Ohio*, 527 U.S. 198 (1999), that an order of sanctions against counsel pursuant to Federal Rule of Civil Procedure 37(a)(4) is not "final" within the meaning of 28 U.S.C. § 1291, and thus cannot be appealed immediately. *Id.* at 205-10. Other circuits have applied *Cunningham*'s rationale to conclude that orders issued under Federal Rule of Bankruptcy Procedure 9011, *Klestadt & Winters, LLP v. Cangelosi*, 672 F.3d 809, 816-19 (9th Cir. 2012), and pursuant to the sanctioning court's inherent authority to impose civil contempt sanctions, *Comuso v. Nat'l R.R. Passenger Corp.*, 267 F.3d 331, 335-39 (3d Cir. 2001), are not final, appealable orders under § 1291.

---

[2]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

Our jurisdiction over bankruptcy appeals, however, is governed by 28 U.S.C. § 158(d)(1), which establishes a "more flexible" standard of finality than does § 1291. *Contractors, Laborers, Teamsters and Eng'rs Health & Welfare Plan v. Killips* (*In re M&S Grading, Inc.*), 526 F.3d 363, 368 (8th Cir. 2008). Under this standard, finality depends on the extent to which (1) the order being appealed "leaves the bankruptcy court nothing to do but execute the order," (2) delay in appellate review would prevent "effective relief," and (3) a later reversal "would require recommencement of the entire proceeding." *Id.* (internal quotation omitted).

The bankruptcy court invoked Federal Rule of Bankruptcy Procedure 9011 in sanctioning Isaacson. If the $5,000 penalty is a civil sanction pursuant to Rule 9011, then the second and third prongs of the § 158(d) analysis suggest that we lack jurisdiction: delay would not prevent Isaacson from receiving effective relief from monetary sanctions, and reversal of the sanctions order would not require reopening of the bankruptcy proceeding. *See Winslow v. Hunter* (*In re Winslow*), No. 91-1239, 1992 WL 19837, at *2 (10th Cir. Feb. 5, 1992); *Oxley v. Watson* (*Matter of Watson*), 884 F.2d 879, 880-81 (5th Cir. 1989); *cf. Klestadt & Winters*, 672 F.3d at 816 n.7; *In re Rimsat, Ltd.*, 212 F.3d 1039, 1044 (7th Cir. 2000). But Isaacson contends that the sanctions issued against her are criminal in nature, because the monetary penalty was punitive and not intended to compensate the court. If the sanctions order is criminal rather than civil, then it is a final, appealable order. *Union Tool Co. v. Wilson*, 259 U.S. 107, 111 (1922).

As presented by the parties, therefore, the jurisdictional inquiry seems to turn on whether a non-compensatory monetary sanction made payable to the court and issued under Rule 9011 is a "criminal" sanction that is immediately appealable. The leading authorities suggest that the answer may be "no," because Rule 9011 and Rule 11 contemplate the imposition of civil sanctions that are non-compensatory. *See* Fed. R. Civ. P. 11 advisory committee's note on 1993 amendments (noting that "[s]ince the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule

provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty"); *Miller v. Cardinale* (*In re DeVille*), 361 F.3d 539, 552 (9th Cir. 2004) ("The 1993 notes provide controlling insight into current Rule 11 and current Rule 9011, foreclosing the contention that the drafters of either rule were contemplating a criminal process."); *Donaldson v. Clark*, 819 F.2d 1551, 1558-59 (11th Cir. 1987) ("A violation of Rule 11 is fundamentally different from an infraction of criminal contempt and therefore warrants different sanction proceedings.").

On close review, however, we conclude that Rule 9011 did not authorize the sanctions imposed in this case. Rule 9011 authorizes a court to impose "an appropriate sanction upon *the attorneys, law firms, or parties*" who violate the rule's requirements governing representations to the court. Fed. R. Bankr. P. 9011(c) (emphasis added). Isaacson was not an attorney, a law firm, or a party: she was an officer of a corporate party. The plain language of the rule thus excludes authority to sanction Isaacson. Where the rulemakers have authorized courts to sanction not only attorneys, law firms, and parties but also the individual officers of parties, they have done so expressly. *See* Fed. R. Civ. P. 37(b)(2) (authorizing sanctions against "a party or a party's officer, director, or managing agent"). The bankruptcy court thus had no authority under Rule 9011 to sanction Isaacson. *Cf. Gelt v. Janowitz* (*In re Chisholm Co.*), 166 B.R. 706, 713-15 (D. Colo. 1994) (applying former rule); *Leventhal v. New Valley Corp.*, 148 F.R.D. 109, 112 (S.D.N.Y. 1993) (same); *PaineWebber, Inc. v. Can Am Fin. Grp., Ltd.*, 121 F.R.D. 324, 335-36 (N.D. Ill. 1988) (same); *but cf. Caldwell v. Unified Capital Corp.* (*In re Rainbow Magazine*), 77 F.3d 278, 282 (9th Cir. 1996) (applying former rule); *Project 74 Allentown, Inc. v. Frost*, 143 F.R.D. 77, 83 n.7 (E.D. Pa. 1992) (same), *aff'd*, 998 F.2d 1004 (3d Cir. 1993).

That Rule 9011 is inapplicable does not mean that the bankruptcy court lacked authority to sanction Isaacson altogether. Federal courts possess certain inherent powers, including the "power to punish for contempts," which "reaches both conduct

before the court and that beyond the court's confines." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (internal quotation omitted). Unlike the sanctioning authority conferred by Rule 9011, the inherent authority of a court to police itself includes the authority to sanction the bad-faith conduct of individuals other than attorneys, law firms, and parties. *See id.* at 40 n.5, 50-51. Action against Isaacson thus falls well within the scope of the bankruptcy court's inherent sanctioning power, as she was the debtor's representative in the bankruptcy proceedings and was responsible for the content of filings with the court.

Even where a court cites incorrect authority as the basis for contempt sanctions, we may consider alternative grounds for the imposition of those sanctions, so long as the court could have sanctioned the same conduct under another source of authority, the court's findings are adequate to meet the applicable standard, and the contemnor's due process rights are protected. *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1225-27 (3d Cir. 1995); *In re Courtesy Inns, Ltd.*, 40 F.3d 1084, 1089-90 (10th Cir. 1994). The bankruptcy court determined that Isaacson caused the filing of papers that contained "unbelievably and unmitigatingly outrageous" assertions. This is the sort of contumacious conduct that is sanctionable under the court's inherent power. *See Chambers*, 501 U.S. at 50; *Caldwell*, 77 F.3d at 283-85; *United States v. Thoreen*, 653 F.2d 1332, 1340 (9th Cir. 1981); *Chilcutt v. United States*, 4 F.3d 1313, 1328 (5th Cir. 1993) (Jones, J., concurring). As Isaacson received notice of the "precise ground for the imposition of sanctions" and an opportunity to be heard, we may consider whether the award should be affirmed based on the bankruptcy court's inherent power. *Fellheimer*, 57 F.3d at 1227. Because the monetary penalty was punitive, payable to the court, and non-compensatory, the penalty imposed was criminal in nature. *Hicks v. Feiock*, 485 U.S. 624, 631-32 (1988). We therefore have jurisdiction over this appeal. *Union Tool Co.*, 259 U.S. at 111.

B.

Isaacson challenges the bankruptcy judge's failure to recuse herself from the contempt proceedings. Isaacson asserts that the statements for which she was sanctioned "greatly offended the personal sensitivities of the judge," and that the rationale of *Mayberry v. Pennsylvania*, 400 U.S. 455 (1971), required the judge to recuse. *Mayberry* held that where a judge was the target of a litigant's ongoing "brazen efforts to denounce, insult, and slander the court" during a twenty-one-day trial, *id.* at 462, and became "embroiled in a running, bitter controversy" with the litigant, recusal was necessary. *Id.* at 465. "No one so cruelly slandered," thought the Court, "is likely to maintain that calm detachment necessary for fair adjudication." *Id.*; *see also Taylor v. Hayes*, 418 U.S. 488, 501 (1974) (reassignment required where judge had "become embroiled in a running controversy" with putative contemnor, despite the absence of "personal attack").

Isaacson, however, did not move for recusal or object to the judge's participation, and she therefore forfeited any objection. We review forfeited objections in a criminal proceeding under the plain-error standard of Federal Rule of Criminal Procedure 52(b), which requires the appellant to show an obvious error that affected her substantial rights and seriously affected the fairness, integrity, or reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732-34 (1993). Isaacson has not satisfied that standard, because the bankruptcy court did not commit an obvious error by failing to recuse *sua sponte*, and there is no showing of prejudice or miscarriage of justice.

In *Mayberry*, the Supreme Court held that "a defendant in criminal contempt proceedings should be given a public trial before a judge other than the one reviled by the contemnor." 400 U.S. at 466. But the Court also explained that "not every attack on a judge . . . disqualifies him from sitting." *Id.* at 465. The Court distinguished *Ungar v. Sarafite*, 376 U.S. 575 (1964), which affirmed a contempt

conviction where the same judge who had been the subject of the contemnor's vitriol presided over the contempt proceedings. In *Ungar*, a hostile prosecution witness refused to answer questions and accused the court of badgering him and suppressing evidence. *Id.* at 579-80. The trial judge did not become "embroiled in intemperate wrangling" with the witness, but "strongly admonished [him] that his conduct was disruptive and disorderly and that he would be held to the natural consequences of his acts." *Id.* at 585. *Ungar* held that the judge's participation in the contempt proceedings was not a due process violation, because the record did not create "an abiding impression that the trial judge permitted himself to become personally embroiled with the petitioner." *Id.* Although the witness had offered "disruptive, recalcitrant and disagreeable commentary, [it was] hardly an insulting attack upon the integrity of the judge carrying such potential for bias as to require disqualification." *Id.* at 584.

The line between *Ungar* and *Mayberry* is indistinct, and this case is not obviously governed by *Mayberry* and its requirement of recusal. In *Mayberry*, the contemnor persistently antagonized the judge over twenty-one days, calling him a "dirty, tyrannical old dog," "stumbling dog," and "fool" to his face. 400 U.S. at 456-61. The Court determined that this behavior was "apt to strike at the most vulnerable and human qualities of a judge's temperament," and thus required a different judge to preside over the contempt proceedings. *Id.* at 466 (internal quotation omitted). Unlike the "fighting words" uttered in the judge's presence over a considerable period of time in *Mayberry*, Isaacson's statements were a scattered attack on various participants in the legal process that were submitted to the bankruptcy court in written memoranda. The record does not show obviously that the judge became "embroiled in intemperate wrangling," *Ungar*, 376 U.S. at 585, or that Isaacson's attack was apt to interfere with the judge's temperament. *Mayberry*, 400 U.S. at 466. The bankruptcy judge reasonably could have concluded that *Mayberry* did not apply. There was no obvious error.

But even if *Mayberry*'s analysis were applied categorically whenever the same judge "reviled by the contemnor" presides over the contempt proceedings, *id.*, Isaacson has not demonstrated prejudice or a miscarriage of justice arising from the bankruptcy judge's participation. While it is "structural" error for a "biased trial judge" to preside in a case, *Neder v. United States*, 527 U.S. 1, 8 (citing *Tumey v. Ohio*, 273 U.S. 510 (1927)), and it is an open question whether an obvious structural error automatically satisfies the third prong of the plain-error test, *Puckett v. United States*, 556 U.S. 129, 140-41 (2009), the *Mayberry* rule addresses the appearance of bias. *Mayberry* focused on the likelihood that a judge could "maintain that calm detachment necessary for fair adjudication," and invoked the Court's previous observation that "'justice must satisfy the appearance of justice.'" 400 U.S. at 465 (quoting *Offutt v. United States*, 348 U.S. 11, 14 (1954)). Later, in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), the Court distinguished a problem of actual bias and structural error in *Tumey v. Ohio* from *Mayberry*'s objective inquiry into whether "the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" *Id.* at 881 (quoting *Mayberry*, 400 U.S. at 465-66); *see also Taylor*, 418 U.S. at 501 (recusal inquiry where a judge becomes "personally embroiled" with a contemnor "must be not only whether there was actual bias," but also whether there was "an appearance of bias"). And where the alleged error arises from a judge's failure to recuse based on an *appearance* of bias or partiality, as opposed to actual bias, the error is subject to prejudice analysis. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 862 (1988); *Harris v. Champion*, 15 F.3d 1538, 1571 (10th Cir. 1994).

We see no reasonable probability of a different outcome before a different judge. The evidence of Isaacson's contempt was undisputed and aggravated. Isaacson's attorney admitted that Isaacson authored the memorandum with unsubstantiated and scurrilous allegations against the court, the trustees, and the judicial system. After the bankruptcy court put Isaacson on notice that she could face monetary sanctions of $1,000 for each of ten unsubstantiated statements, Isaacson

defended their veracity and leveled similar assertions. When the bankruptcy court afforded Isaacson an opportunity to be heard, she failed to appear at the contempt hearing. Only then did the judge issue a sanctions order with a penalty of $500 per statement. Isaacson has not shown a reasonable probability that another judge would have sanctioned her differently. Given the essentially uncontroverted evidence of contempt, there likewise is no basis for concluding that any error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Cotton*, 535 U.S. 625, 633 (2002).

## C.

Isaacson's remaining claims about the contempt process are without merit. The bankruptcy court adequately explained the reason for the sanctions, saying that Isaacson's statements were "totally devoid of any true, factual" basis, and that the motion to vacate was "frivolous" and "inflammatory." After the court issued an order to show cause why Isaacson should not be sanctioned $1,000 per statement, she continued to file documents that were replete with similar statements. We think $500 per statement in these circumstances satisfactorily reflects the seriousness of the contumacious behavior, the public interest in terminating the contemnor's activity, and the importance of deterring such acts in the future. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 303 (1947). The bankruptcy court did not abuse its discretion.

\*     \*     \*

For the foregoing reasons, the judgment of the district court is affirmed.

_____