# United States Bankruptcy Appellate Panel
## For the Eighth Circuit

_____

No. 13-6054

_____

In re: Jonathan Michael Young, also known as Jon Young

*Debtor*

------------------------------

Jonathan Michael Young

*Plaintiff*

v.

Kristalynn Young

*Defendant*

------------------------------

Kathy A. Cruz

*Respondent - Appellant*

_____

Appeal from United States Bankruptcy Court
for the Western District of Arkansas - Hot Springs

_____

Submitted: January 31, 2014
Filed: March 12, 2014

_____

Before KRESSEL, SCHERMER and SHODEEN, Bankruptcy Judges.

_____

SCHERMER, Bankruptcy Judge

Kathy A. Cruz, appeals from the: (1) September 11, 2013 *Order Imposing Sanctions* and *Judgment*; and (2) October 1, 2013 *Order Denying Motion to Vacate or to Alter or Amend Judgment*. For the reasons that follow, we rule consistently with respect to the bankruptcy court's two decisions, affirming in part, and reversing and remanding in part.

## ISSUES

The issues in this appeal are whether the bankruptcy court erred when it: (1) decided that Cruz violated Federal Rule of Bankruptcy Procedure 9011, and imposed sanctions, for her conduct throughout a debtor's case; (2) suspended Cruz from the practice of law in the Arkansas bankruptcy court for a period of time; and (3) imposed sanctions against Cruz under 11 U.S.C. § 105 and its inherent authority based on misrepresentations allegedly made by Cruz during a show cause hearing. The bankruptcy court acted within its discretion when it found a violation of Rule 9011 and imposed sanctions including suspending Cruz from the practice of law in Arkansas's bankruptcy court. However, the bankruptcy court's imposition of sanctions under §105 and its inherent authority was improper because Cruz did not receive separate prior notice and an opportunity to be heard regarding such sanctions.

## BACKGROUND

On January 24, 2008, Jonathan Michael Young (the "Debtor"), filed a petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). Prior to the petition date, the Debtor and his former wife, Kristalynn Young, who is now known as Kristalynn Stephens ("Stephens"), divorced. The state court entered a divorce decree on November 1, 2007, awarding Stephens alimony of $1,100 per month (subject to review after a year), attorney's fees of $10,890 and restitution in the amount of $2,350. The Debtor was put in jail in January 2008 (prepetition) for

2

contempt due to his failure to pay alimony to Stephens. He was released when his parents posted a $5,000 bond. The Debtor's appeal of the divorce decree and the contempt ruling was pending on the petition date.

The Debtor's original Schedule E listed prepetition obligations to Stephens for attorney's fees in the amount of $10,890, and restitution in the amount of $2,350, but it did not include an obligation for prepetition alimony. Instead, the Debtor's Schedule J included $1,100 of alimony each month as a postpetition expense.

Stephens filed a motion in the Debtor's bankruptcy case for relief from the automatic stay with respect to the Debtor's state court appeal. The motion for relief from the stay ended in a June, 2008 agreed order granting relief from the stay. Shortly thereafter, on July 1, 2008, the Debtor's bankruptcy case was converted to one under Chapter 13. The original Chapter 13 plan, filed in July, 2008, did not mention Stephens.

Unfortunately, the parties did not agree on the interpretation of the June, 2008 stay relief order and whether Stephens was permitted to seek a ruling of contempt against the Debtor in state court. After the entry of the stay relief order and after the state appellate court affirmed the lower state court's decision, Stephens sent a letter to the Debtor dated October 6, 2008 (the "October Letter"). The October Letter set forth the arrearages in the Debtor's alimony payments for the period October, 2007 through October, 2008.

The bankruptcy court stated that, applying the bond that was posted earlier by the Debtor's parents to the amount of the alimony arrearages stated in the October Letter, resulted in a balance of $9,300, most (if not all) of which accrued postpetition, and that the October Letter stated that if Stephens did not receive assurances of payment from the Debtor by a date certain, she would file for contempt. Stephens filed a petition in state court and the state court held contempt hearings in December

2008 and March 2009, resulting in the Debtor being held in contempt and serving jail time.

It was Stephens's request for a ruling of contempt that led to the filing of an adversary proceeding by the Debtor against Stephens in December, 2010, alleging a stay violation. In his adversary proceeding, the Debtor referred to his alimony arrearages as "prepetition" alimony. In addition, in the complaint, the Debtor claimed that Stephens had not been paid because she continued to object to confirmation of the plan and she failed to file a proof of claim.

Two days after the date of the October Letter, on October 8, 2008, Cruz: (1) amended the Debtor's Schedule E to include $9,300 in alimony (the exact balance determined by the bankruptcy court to be set forth in the October Letter after applying the bond posted by the Debtor's parents), as a §507(a)(1) unsecured priority claim; and (2) filed a *Modification of Chapter 13 Plan* (the "Modified Plan") that included a priority debt for $9,300 in "past due alimony," to be paid in full under the plan, and stated that the Debtor would "continue" to make his $1,100 alimony payments to Stephens directly. The Modified Plan also provided for full payment of the restitution and attorney fee amounts set forth in the divorce decree.

Beginning in 2008 and ending in 2009, the Chapter 13 trustee filed objections to the Debtor's Chapter 13 plan on the basis that the Debtor did not provide proof of payment of postpetition domestic support obligations. The Debtor obtained several continuances of the confirmation hearing. And, although Stephens's last objection to plan confirmation was withdrawn early in 2009, the Debtor did not confirm a plan until April 6, 2011, because of the trustee's pending objections.

Following the October, 2008 Modified Plan, the Debtor modified his plan twice: (1) once in March, 2009 (making no changes to plan provisions), at the same time the Debtor filed an amended Schedule J showing an amended alimony expense

4

of $800; and (2) the second time in March, 2011, when Crux filed a third modified plan (the "Third Modified Plan"). The Third Modified Plan included a statement "[t]hat the [D]ebtor believes he is current on all domestic support obligations that were due after the filing date of his chapter 13 plan." Other than this statement, the terms of the plan did not change. In April, 2011, the bankruptcy court entered an order confirming the Debtor's Chapter 13 plan.

On March 10, 2009, after the time of the state court contempt hearing, Stephens filed a proof of claim in the Debtor's bankruptcy case, which characterized the claim as a prepetition priority domestic support claim under 11 U.S.C. § 507(a)(1), and attached the divorce decree. The Debtor objected to the proof of claim only on the basis of the amount of the claim, not based on the characterization of it as a prepetition priority claim. The bankruptcy court sustained the claim objection, and Stephens was permitted to, and did, file an amended unsecured, priority claim in a lesser amount (an amount that the bankruptcy court later construed to represent prepetition restitution and attorney's fees under the divorce decree, plus mostly postpetition alimony, under the divorce decree), but with the same classification.

The bankruptcy court found that the Debtor made his required plan payments, but, notwithstanding the fact that he listed an alimony expense on his Schedule J, he had never made his postpetition alimony payments to Stephens.

The bankruptcy court held a trial in the adversary proceeding and, in June, 2013, the court issued its decision in the adversary proceeding. In its *Memorandum Opinion* on the merits in the adversary proceeding, the court set forth the basis for its issuance of a separate show cause order. The court issued a separate *Order to Appear and Show Cause* (the "OSC"), which "direct[ed] the [D]ebtor to show cause why his case should not be dismissed for cause pursuant to 11 U.S.C. § 1307, . . . , and direct[ed] the [D]ebtor's attorney, [Cruz], to show cause why she should not be

5

sanctioned pursuant to Federal Rule of Bankruptcy Procedure 9011."[1] The OSC also stated that it "is issued pursuant to 11 U.S.C. § 105 and Federal Rule of Bankruptcy Procedure 9011(c)(1)(B)." That is the only reference in the OSC to § 105. The OSC set forth the possibly sanctionable conduct of Cruz under a heading titled "Federal Rule of Bankruptcy Procedure 9011." The OSC set forth four bases upon which the court was considering sanctions against Cruz, with specific information about the court's concerns. Thereafter, the court entered an order inviting written responses to the OSC.

Following a hearing on the OSC, the court issued its *Order Imposing Sanctions* and its separate *Judgment*. Referring to three of the four items set forth in its OSC, the court imposed sanctions against Cruz under Federal Rule of Bankruptcy Procedure 9011, suspending her from practice in the Arkansas bankruptcy court for six months, imposing a $1,000 fine, payable to the Clerk of the court, and requiring her, within six months, to attend twelve hours of continuing legal education on Chapter 13 bankruptcy. The court also sanctioned Cruz, under 11 U.S.C. § 105 and the court's inherent power, for alleged misrepresentations made by Cruz in her testimony to the court at the hearing on the OSC, imposing a concurrent six month suspension on her practice before the Arkansas bankruptcy court, and fining her an additional $1,000 payable to the Clerk of the court. In addition, the court referred and provided a copy of the sanctions order to the Office of the Committee on Professional Conduct.[2]

---

[1]     The bankruptcy court withdrew the OSC against the Debtor.

[2]     The bankruptcy court entered an order, upon certain conditions, staying its sanctions award pending this appeal. The conditions for the stay were that Cruz was required to deposit $2,000 into the court registry and the stay will terminate immediately once we enter our ruling in this appeal.

Cruz then filed a *Motion to Vacate or to Alter or Amend Judgment*, which the bankruptcy court denied.

## STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed for clear error, and conclusions of law are reviewed *de novo*. *Briggs v. LaBarge (In re Phillips)*, 433 F.3d 1068, 1071 (8th Cir. 2006) (citation omitted). "A bankruptcy court's decision to impose sanctions is reviewed for an abuse of discretion." *Id.* (citing *Schwartz v. Kujawa (In re Kujawa)*, 270 F.3d 578, 581 (8th Cir. 2001)*; Grunewaldt v. Mut. Life Ins. Co. of N.Y. (In re Coones Ranch, Inc.),* 7 F.3d 740, 743 (8th Cir. 1993) ("We apply an abuse-of-discretion standard of review in all aspects of Rule 11 (and by analogy, Rule 9011) cases.") (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

## DISCUSSION

### A.   Jurisdiction

As a preliminary matter, we have jurisdiction over this appeal from the final orders and judgment of the bankruptcy court. *See* 28 U.S.C. § 158(a)(1) and (b). The standard for determining finality for the purposes of appeal is "more flexible" in bankruptcy matters than it is in other civil cases. *Isaacson v. Manty*, 721 F.3d 533, 537 (8th Cir. 2013) ("Our jurisdiction over bankruptcy appeals, however, is governed by 28 U.S.C. § 158(d)(1), which establishes a 'more flexible' standard of finality than does [28 U.S.C.] § 1291.") (citing *Contractors, Laborers, Teamsters and Eng's Health and Welfare Plan v. Killips (In re M&S Grading, Inc.*), 526 F.3d 363, 368 (8th Cir. 2008)). "Although this standard is more flexible than in nonbankruptcy contexts, an order entered before the conclusion of a bankruptcy case is not subject to review under § 158(d) unless it finally resolves a discrete segment of the underlying proceeding." *M&S Grading, Inc.*, 526 F.3d at 368 (citing *In re Farmland Indus.*, *Inc.*, 397 F.3d at 650). "[F]inality depends on the extent to which (1) the order being appealed 'leaves the bankruptcy court nothing to do but execute the order,' (2) delay

7

in appellate review would prevent 'effective relief,' and (3) a later reversal 'would require recommencement of the entire proceeding.' " *Isaacson*, 721 F.3d at 537 (citing *M&S Grading, Inc.*, 526 F.3d at 368).

The bankruptcy court's orders and judgment were final. The bankruptcy court based its ruling imposing sanctions on Rule 9011, § 105 and its inherent authority. *See Isaacson*, 721 F.3d at 537-38 (discussing finality in context of sanctions order). Sanctions were imposed after the Chapter 13 plan was confirmed, and after the court had entered its judgment on the merits in the adversary proceeding. In addition, the Debtor obtained his Chapter 13 discharge less than two months after Cruz filed her amended notice of appeal, and the Chapter 13 trustee filed his final report less than three months after Cruz filed her amended notice of appeal. The bankruptcy court imposed nonmonetary sanctions. And, the monetary sanctions imposed by the bankruptcy court were non-compensatory and were made payable to the Clerk of the bankruptcy court.

## B.    Sanctions

Pursuant to Federal Rule of Bankruptcy Procedure 9011(c)(1)(B), a bankruptcy court may impose sanctions on its own initiative. FED. R. BANKR. P. 9011(c)(1)(B). In addition, Bankruptcy Code § 105(a) provides a bankruptcy court with authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, and allows the court to "tak[e] action or mak[e] any determination necessary or appropriate to . . . prevent an abuse of process." 11 U.S.C. § 105(a). And, a bankruptcy court "may also possess 'inherent power . . . to sanction 'abusive litigation practices.' " *Law v. Siegel*, ___ S. Ct. ___, 2014 WL 813702, at *5 (March 4, 2014) (citing *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 375-376 (2007)) (quotation marks omitted)).

Notice and an opportunity to be heard must be afforded to the party to be sanctioned prior to the imposition of sanctions. *Walton v. LaBarge (In re Clark)*, 223

F.3d 859, 864 (8th Cir. 2000) (citing *Chambers v. NASCO, Inc.*) 501 U.S. 32, 56-57 (1991)); Fed. R. Bankr. P. 9011(c). "[N]otice must be given that the court is considering imposing sanctions." *Id.* at 864-865.

### (I)    Sanctions based on conduct throughout the case

The bankruptcy court imposed sanctions against Cruz under Federal Rule of Bankruptcy Procedure 9011 for her conduct related to filings throughout the case. Pursuant to Rule 9011(b), an attorney presenting papers to the court makes certain certifications. The attorney:

> (b) is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, -
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and] (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. . .

FED. R. BANKR. P. 9011(b)(1) - (3). Assuming notice has been given and the party to be sanctioned has had a reasonable opportunity to respond, the bankruptcy court may impose sanctions for a violation of Rule 9011(b). FED. R. BANKR. P. 9011(c).

Rule 9011(c)(1)(B) discusses the imposition of sanctions on the court's initiative: "On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto." FED. R. BANKR. P. 9011(c)(1)(B). The order imposing sanctions "shall describe the

conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed." FED. R. BANKR. P. 9011(c)(3).[3]

### (a) Determination of Rule 9011 violation and imposition of sanctions

The bankruptcy court acted within its discretion when it found violations of Rule 9011(b) and imposed sanctions on Cruz under Rule 9011 for her conduct throughout the Debtor's case. We see no problem with the notice and opportunity to respond provided by the bankruptcy court to Cruz (and Cruz does not complain of any) with respect to Cruz's Rule 9011 violations and related sanctions. The OSC set forth four clear and easy to comprehend bases upon which it believed Rule 9011(b) had been violated and upon which it was considering the imposition of sanctions.

The court's sanctions order explained which conduct was improper and why sanctions were imposed. And, the court's reasons for imposing sanctions under three of the four areas mentioned in the OSC showed that Cruz's conduct in the case was not reasonable under the circumstances. *See Phillips*, 433 F.3d at 1071 ("[T]he attorney must make a reasonable inquiry into whether there is a factual and legal basis for a claim before filing."); *Snyder v. DeWoskin (In re Mahendra)*, 131 F.3d 750, 759 (8th Cir. 1997) ("[T]he established standard for imposing sanctions is an objective determination of whether a party's conduct was reasonable under the circumstances.") (quoting *In re Armwood*, 175 B.R. 779, 788 (Bankr. N.D. Ga. 1994)).

---

[3] To impose monetary sanctions on a court's initiative, the court must "issue[ ] its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned." FED. R. BANKR. P. 9011(c)(2)(B).

### (i) Postpetition domestic support obligations

As the bankruptcy court recognized, a Chapter 13 debtor is required to pay his postpetition domestic support obligations on an ongoing basis. *See* 11 U.S.C. § 1307(c)(11) ("the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, . . . for . . . failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition"); 11 U.S.C. § 1325(a)(8) ("the court shall confirm a plan if . . . the debtor has paid all amounts that are required to be paid under a domestic support obligation and that first become payable after the date of filing of the petition. . . ."); 11 U.S.C. § 1328(a) ("in the case of a debtor who is required . . . to pay a domestic support obligation, after such debtor certifies that all amounts payable . . . that are due on or before the date of the certification . . . have been paid . . . the court shall grant the debtor a discharge. . . .").

Likewise, the court correctly set forth the process by which a debtor lists the amount of his postpetition domestic support obligations as expenses on his Schedule J, and those amounts are subtracted from the debtor's income when computing his Chapter 13 plan payments. *See* 11 U.S.C. § 1325(b)(2)(A)(i) (defining "disposable income" as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . for . . . a domestic support obligation, that first becomes payable after the date the petition is filed[.]"). And, the court recognized that proofs of claims are not permitted for postpetition domestic support obligations. *See* 11 U.S.C. § 502(b)(5) (disallowing a claim "to the extent that . . . such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5) of this title."); *Burnett v. Burnett (In re Burnett)*, 646 F.3d 575, 582 (8th Cir. 2011) (Bankruptcy Code does not allow proof of claim for postpetition domestic support obligation).

### (ii)    Overview

The bankruptcy court characterized Cruz's violations of Rule 9011(b) as an effort to protect the Debtor from the consequences of the Debtor's failure to make his required postpetition alimony payments.  The record amply supports the bankruptcy court's ruling.  The court determined that Cruz had to have known that the Debtor failed to make his required postpetition alimony payments, so Cruz amended the Debtor's schedules and his plan to treat the alimony debt as prepetition priority debt and to state that the Debtor would "continue" to pay his postpetition alimony outside of his plan.  In addition, the plan involved the filing of a false certification regarding payment of postpetition domestic support obligations to obtain confirmation.  Meanwhile, Cruz allowed the Debtor to maintain an expense on the Debtor's Schedule J for postpetition alimony payments, thus excluding that amount from the calculation of the Debtor's payments to creditors under his plan.  Therefore, the bankruptcy court found that Cruz promoted confirmation of a plan that excluded the alimony amount from the funds available to creditors, while affording priority payment to the same alimony debt, at the expense of other creditors.

### (iii)    The Third Modified Plan

Because the bankruptcy court deemed it to be the most serious matter, we begin our discussion with the statement made in the Third Modified Plan "[t]hat the [D]ebtor *believes* he is current on all domestic support obligations that were due *after the filing date of his chapter 13 plan*."  (emphasis added).  To the contrary, Bankruptcy Code § 1325(a)(8) requires, for confirmation, that "the debtor has paid all amounts that are required to be paid under a domestic support obligation and that first become payable *after the date of filing of the petition. . . .*"  11 U.S.C. § 1325(a)(8)(emphasis added).

12

The bankruptcy court determined that Cruz had "manipulated the Code, the court, and the bankruptcy system" when she included the offending statement in the Debtor's Third Modified Plan. In light of the trustee's ongoing objections to confirmation of the plan based on the Debtor's failure to prove compliance with § 1328(a)(8), Cruz's improper intent and purpose for including the offending language in the plan was apparent. The bankruptcy court had solid ground for its reasoning that the Debtor's alteration of the language of § 1325(a)(8) was "a manipulation too subtle to have been anything but purposeful." We also hold that the bankruptcy court was warranted in making its decision that the facts represented by the offending certification lacked support because Cruz knew that the Debtor failed to pay postpetition alimony.

### (iv) The Modified Plan

The OSC alerted Cruz about the bankruptcy court's concerns that: (1) the Modified Plan provided for the Debtor to "continue" to make his $1,100 monthly alimony payments to Stephens, when he had not been making those payments, and did not do so going forward; and that (2) in the Modified Plan, $9,300 of postpetition alimony was improperly characterized as prepetition priority debt.[4]

The record supports the bankruptcy court's determination that, when Cruz filed the Modified Plan stating that the Debtor "shall continue to pay his current monthly alimony of $1,100 to [Stephens] direct," Cruz knew that the Debtor had not been making the postpetition alimony payments on his Schedule J, and had been enjoying the improper deduction on his Schedule J throughout his case. As the court noted, the Modified Plan was filed two days after receipt of the October Letter stating that the Debtor had not been making his alimony payments. The record also shows that the

---

[4] The bankruptcy court also noted that the complaint referred to the Debtor's alimony arrearages as prepetition alimony.

13

Modified Plan was filed after the Debtor was jailed for his failure to comply with obligations under the divorce decree. There was a firm basis for the bankruptcy court's determination that Cruz acted with an improper purpose when she double listed the alimony as an expense on Schedule J and a priority debt to be paid through the plan. We will not second guess the bankruptcy court's rejection of Cruz's stated reasons why she believed the statements in the Modified Plan were appropriate.

The bankruptcy court's ruling that the Debtor improperly took $9,300 in mostly postpetition alimony and recharacterized it as prepetition priority alimony in the Modified Plan, was also supported by the record. The court compared the calculations in the October Letter and in the divorce decree to show this mischaracterization of the debt. In the sanctions order, the court considered the record as a whole and various parts of it, to decide that Cruz could not show a factually and legally supported basis for her actions or filings, and that she acted for an improper purpose. Cruz attempted to rationalize her listing in the plan of $9,300 in prepetition priority debt based on her preconversion theory. Under Cruz's preconversion theory, the Debtor was supposedly permitted to characterize postpetition domestic support obligation debt as prepetition debt in his converted case, provided such debt was incurred prior to the conversion date.

The court noted that the $9,300 amount in the plan fit neatly with the alimony calculation in the October Letter, but the court found that Cruz could not satisfactorily explain how she arrived at the $9,300 amount set forth in the Modified Plan, and how that entire amount was for debt attributable to the preconversion period. In addition, the court appropriately decided that the characterization of the alimony obligation by Cruz in the Modified Plan ignored, and was belied by, the Debtor's Schedule J, which lists an ongoing monthly expense for alimony. And, we note that, as the bankruptcy court recognized, the legal arguments made by Cruz do

14

not make sense in light of the bankruptcy court's assessment of the facts. Therefore, we do not explore any such arguments further.

### (v) The complaint

Certain provisions of the complaint filed in the adversary proceeding merited attention in the OSC. The bankruptcy court was concerned about Cruz's statements in the complaint that, as of the time of the March 9, 2009 state court contempt hearing, Stephens "still had not been paid because [she] had failed to file a Proof of Claim, and had continued to object to confirmation." The court viewed this statement as a part of Cruz's characterization of the situation as one where Stephens willfully violated the stay by bringing the state court contempt action and trying to collect money but, had she filed a proof of claim and not objected to confirmation of the plan, she would otherwise have access to such funds.

As the bankruptcy court recognized, the statement regarding objections to confirmation by Stephens is factually incorrect. The record reflects that as of the March 9, 2009 state court contempt hearing, Stephens did not have a pending objection to the Debtor's plan. The statement that Stephens did not receive payment because she had not filed a proof of claim as of the March 9, 2009 contempt hearing was legally incorrect. We agree with the bankruptcy court's statement that where the Debtor had consistently scheduled the alimony as a postpetition expense on his Schedule J, Stephens was not required or permitted under the Bankruptcy Code to file a proof of claim for that debt.

### (b) Amount and type of sanctions

The amount and type of sanctions were appropriate under the circumstances. Sanctions shall be "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." FED. R. BANKR. P. 9011(c)(2). In

addition, sanctions entered on a court's initiative may be in a nonmonetary form or in the form of an order to pay a penalty into the court. FED. R. BANKR. P. 9011(c)(2).

The monetary sanction of $1,000 imposed by the bankruptcy court was commensurate with the goal of deterring Cruz and others from future misconduct. Likewise, we see no problem with the requirement for Cruz to attend continuing legal education on Chapter 13. And, we see no abuse in the bankruptcy court's referral of this matter to the Office of the Committee on Professional Conduct.

### (i)     Suspension of Cruz from practice

Cruz specifically attacks the bankruptcy court's ruling suspending her from practice in the Arkansas bankruptcy court for six months. According to Cruz, the bankruptcy court did not have the authority to suspend Cruz from practicing law because such a suspension did not comport with the requirements of a local rule of the District Courts for the Eastern and Western Districts of Arkansas. We disagree.

Local Rule 2090-2 of the United States Bankruptcy Court for the Eastern and Western District of Arkansas states that:

> The standard of professional conduct for attorneys practicing in this Court is governed by the Arkansas Rules of Professional Conduct and Federal Rule of Bankruptcy Procedure 9011. The Court will refer violations of the Arkansas Rules of Professional Conduct to the Arkansas Committee on Professional Conduct for such actions and such sanctions as the Committee deems appropriate. Additionally, the Court shall have such authority and discretion as are permitted by and under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, statutory and common law, and the express and inherent powers conferred upon them. *Sanctions may include suspension or disbarment from the practice before this Court.*

BANKR. ARK. LOCAL R. 2090-2 (emphasis added).

16

Local Bankruptcy Rule 9020-2 was approved by the Eighth Circuit Judicial Council and by the United States District Courts for the Eastern and Western Districts of Arkansas.  It is, therefore, irrelevant what the district courts' rules provide.  The bankruptcy court's rule permits suspension from practice as sanctions.  And, the bankruptcy court acted within its discretion when it imposed the sanction of a six month suspension of Cruz from practice, as that sanction was reasonably suited to the violations found by the bankruptcy court.

**(II)** **Sanctions based on conduct at hearing on the order to show cause**

The bankruptcy court imposed sanctions against Cruz under § 105 and the court's inherent powers for what it referred to as misrepresentations during her testimony at the show cause hearing.  Cruz was not given notice and an opportunity to be heard before the imposition of such sanctions.  The OSC did not, and could not have, mentioned the possibility of being sanctioned for her allegedly false testimony at a hearing that had not yet taken place.  Cruz was not alerted to such sanctions until they were already imposed.  Given the seriousness of a decision to impose sanctions, separate notice and an opportunity to be heard were necessary.  Therefore, we reverse the imposition of sanctions against Cruz based on her testimony at the OSC hearing, and we remand that matter to the bankruptcy court to hold a hearing if it wishes to do so.  We also direct the bankruptcy court, prior to any such hearing, to provide Cruz with notice regarding which portions of her testimony at the hearing on the OSC are alleged to be sanctionable, and an opportunity for Cruz to respond.

**CONCLUSION**

For the reasons stated, we affirm the bankruptcy court's decision that Cruz violated Federal Rule of Bankruptcy Procedure 9011, as well as its imposition of sanctions in connection therewith, including suspension of Cruz from practice.  We reverse the bankruptcy court's imposition of sanctions against Cruz based on her testimony at the hearing on the OSC, and we remand to the bankruptcy court the decision regarding sanctions for alleged misrepresentations by Cruz at that hearing.

17

If the bankruptcy court wishes to consider sanctions for Cruz's testimony at the show cause hearing, it shall hold a separate hearing and, prior to any such hearing, provide Cruz with notice and an opportunity to respond regarding which portions of Cruz's testimony are alleged to be sanctionable.

———————————