#28016-a-JMK
**2017 S.D. 55**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                                    Plaintiff and Appellee,

              v.

CHARLES MICHAEL SHELTON, JR.,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BEADLE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JON R. ERICKSON
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

GRANT FLYNN
Assistant Attorney General
Pierre, South Dakota                                             Attorneys for plaintiff
                                                                            and appellee.


JEFF BURNS of
Churchill, Manolis, Freeman,
  Kludt, Shelton & Burns LLP
Huron, South Dakota                                           Attorneys for defendant
                                                                            and appellant.

\* \* \* \*

                                                                            CONSIDERED ON BRIEFS
                                                                            ON AUGUST 28, 2017
                                                                            OPINION FILED 09/13/17

KERN, Justice

[¶1.]     Charles Shelton appeals from a judgment of conviction for fourth-degree rape.  He contends that his conviction should be reversed because the circuit court judge lacked jurisdiction to enter the judgment and because he did not receive a preliminary hearing after the State filed an amended information.  We affirm.

### Facts and Procedural History

[¶2.]     Following accusations that he provided a minor with alcohol and then had sexual intercourse with her while she was passed out, Shelton was indicted on one count of third-degree rape and one count of fourth-degree rape.  The minor was fifteen years old at the time of the incident.

[¶3.]     Approximately one month before Shelton's trial, his attorney moved to withdraw from the case.  Shelton's former cellmate came forward with information that Shelton confessed to him that Shelton had committed the rape.  The attorney represented both Shelton and the former cellmate.  Due to the conflict, the court allowed the attorney to withdraw and appointed a new attorney to represent Shelton.  A week later, the circuit judge overseeing the matter sent a letter to the new attorney disclosing that the judge's ex-wife is a partner in the new attorney's law firm and that this was a potential basis for disqualification.  The judge stated:

> You are now advised that I will disqualify myself from this proceeding, and another judge will be assigned to hear this case, unless you and your client agree in writing that I should not be disqualified, and that I may continue to preside over this action.

A written agreement waiving disqualification was not provided and there was no further mention of the issue in the record. Nevertheless, the same judge continued to preside over the trial.

[¶4.] Three days before the trial, the State filed an amended complaint and information. This was done to correct a clerical error in the original indictment. The caption of the indictment reflected that Shelton was charged with one count of third-degree rape and one count of fourth-degree rape. However, in the body of the indictment under Count I, it stated that Shelton "did commit the public offense of RAPE – SECOND DEGREE (SDCL 22-22-1(4))[.]" While the citation to the statute correctly corresponded with third-degree rape, the text before it indicated Shelton was charged with second-degree rape. The amended information corrected the mistake. Before Shelton's jury trial commenced, the court noted that the amended information had been filed and arraigned Shelton on the charges. Shelton was not advised of his right to a preliminary hearing—nor did he receive one. Yet Shelton failed to object. The jury was instructed on the elements of third-degree rape and fourth-degree rape and the evidence presented at trial conformed to those charges.

[¶5.] Following trial, Shelton was acquitted of third-degree rape but found guilty of fourth-degree rape. The court sentenced Shelton to fifteen years in the penitentiary. Shelton appeals, arguing that the judge lacked jurisdiction to enter the judgment of conviction due to judicial disqualification and that in the absence of a preliminary hearing on the amended information, the court lacked jurisdiction to proceed.

## Analysis

*Judicial Disqualification*

[¶6.]		Under South Dakota law, there are three avenues for judicial disqualification.  The first is under the Due Process Clause of the United States and South Dakota Constitutions.  Due process violations for judicial bias constitute structural error.[1]  *Isaacson v. Manty*, 721 F.3d 533, 540 (8th Cir. 2013).  The second is a statutory right to file an affidavit for a change of judge, which is codified in SDCL chapter 15-12.  This is accomplished by informally requesting the judge to disqualify themselves, and if the judge declines, filing a formal affidavit alleging that "the party making such affidavit has good reason to believe and does actually believe that such party cannot have a fair and impartial trial before the named judge or magistrate."  SDCL 15-12-26.  "Filing a timely and compliant affidavit results in mandatory, automatic disqualification[,]" *O'Neill v. O'Neill*, 2016 S.D. 15, ¶ 41, 876 N.W.2d 486, 502, and if a judge continues to preside over the proceedings after a proper affidavit is filed, "all subsequent orders and judgments are void[,]" *State v. Johnson*, 2004 S.D. 135, ¶ 9, 691 N.W.2d 319, 322 (quoting *State v. Peterson*, 531 N.W.2d 581, 583 (S.D. 1995)).  The third avenue for disqualification is provided in the Code of Judicial Conduct, which is codified at SDCL chapter 16-2, appendix A.

[¶7.]		Citing *Johnson*, Shelton maintains that the judge lost jurisdiction over this matter when he deemed himself disqualified under the Code of Judicial

---

1.		Shelton does not argue that his due process rights were violated.

Conduct and that the judgment of conviction entered by the judge is, therefore, void. Shelton conflates the issues of the statutory right to file an affidavit for a change of judge and judicial disqualification under the Code of Judicial Conduct. In *Johnson*, we acknowledged that "[o]nce disqualified by the filing of an affidavit for change of judge, the challenged judge has no jurisdiction to consider the propriety of the affidavit or to continue with the action." *Id.* ¶ 8. As a consequence for continuing to preside over the proceedings after an affidavit was properly filed, we deemed that all subsequent orders and judgments were void. *Id.* ¶ 9. But an affidavit for change of judge was not filed in this case. As such, *Johnson* is not applicable.

[¶8.]     Rather, in this case, the judge deemed himself disqualified under Canon 3 E(1) of the Code of Judicial Conduct.[2] Under the Code of Judicial Conduct,

---

2.     Canon 3 E(1) provides:

A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a)     the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b)     the judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge has been a material witness concerning it.

(c)     the judge knows that he or she, individually or as a fiduciary, or the judge's spouse, parent or child wherever residing, or any other member of the judge's family residing in the judge's household, has an economic interest in the subject matter in controversy or in a party to the proceeding or has any other more than de minimis interest that could be substantially affected by the outcome of the proceeding;

(continued . . .)

"[a] judge exercises discretion in deciding whether the facts and circumstances fit within the disqualifying criteria." *Marko v. Marko*, 2012 S.D. 54, ¶18, 816 N.W.2d 820, 826. However, once the judge answers that question affirmatively, "he must recuse himself; that is not discretionary." *Id.* (quoting Childers and Davis, *Federal Standards of Review* § 12.05, at 12–31 (3d ed.1999)). The judge in this matter determined that he was disqualified, and absent a waiver from the parties, erred by continuing to preside over the matter.

[¶9.] We have had occasion to review whether judges have erred in refusing to disqualify themselves under the Code of Judicial Conduct. *See, e.g., Id.* ¶¶ 17-30, 816 N.W.2d at 825-29. We have not, however, had occasion to determine what

---

(. . . continued)

      (d)    the judge or the judge's spouse, or a person within the third degree of relationship to either of them or the spouse of such a person:

          (i)    is a party to the proceeding, or an officer, director or trustee of a party;

          (ii)    is acting as a lawyer in the proceeding;

          (iii)    is known by the judge to have a more than de minimis interest that could be substantially affected by the proceeding, but the judge shall disclose such de minimis interest to the parties;

          (iv)    is to the judge's knowledge likely to be a material witness in the proceeding.

      (e)    the judge, while a judge or a candidate for judicial office, has made a public statement that commits, or appears to commit, the judge with respect to:

          (i)    an issue in the proceeding; or

          (ii)    the controversy in the proceeding.

SDCL ch. 16-2 app. A. So long as the grounds for potential disqualification are not personal bias or prejudice, Canon 3 F permits a judge otherwise disqualified under Canon 3 E(1) to disclose the basis of the disqualification and ask the parties to waive any potential disqualification. *Id.*

action is necessary when a judge does, in fact, err. The United States Supreme Court has provided guidance in this area.

[¶10.] In *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 108 S. Ct. 2194, 100 L. Ed. 2d 855 (1988), the plaintiff claimed, after trial and entry of a final judgment, that the trial judge should have recused himself from the matter under the Code of Judicial Conduct.[3] *Id.* at 850, 108 S. Ct. 2198. The Court recognized that while Canon 3 E(1) "defines the circumstances that mandate disqualification of . . . judges, it neither prescribes nor prohibits any particular remedy for a violation of that duty."[4] *Id.* at 862, 108 S. Ct. at 2204. This decision was "wisely delegated to the judiciary" and thus, the courts are left to fashion a remedy that would "best serve the purpose of the [Code of Judicial Conduct]." *Id.* The Court reasoned that "[t]here need not be a draconian remedy for every violation of [Canon 3 E(1),]" and that "there is surely room for harmless error committed by busy judges who inadvertently overlook a disqualifying circumstance." *Id.*, 108 S. Ct. at 2203-04. Keeping these principles in mind, the Court crafted a three-part test to aid in determining what action should be taken for a violation of Canon 3 E(1).

[¶11.] The test is this: in determining what action, if any, should be taken for a violation of Canon 3 E(1), "it is appropriate to consider the risk of injustice to the

---

3. The plaintiff did not learn of the potential basis for disqualification until ten months after the judgment was entered.

4. The federal counterpart to Canon 3 E(1) is codified at 28 U.S.C. § 455 (2015). The federal statute is substantially similar to our rule.

parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Id.* at 864, 108 S. Ct. at 2205. Other courts that employ this test emphasize that these cases are "extremely fact intensive and fact bound, and must be judged on [their] unique facts and circumstances more than by comparison to situations considered in prior jurisprudence." *United States v. Jordan*, 49 F.3d 152, 157 (5th Cir. 1995); *see also Scott v. United States*, 559 A.2d 745, 753 (D.C. 1989) ("The extent of the risk is, of course, dependent upon the circumstances surrounding the violation."). We agree with the United States Supreme Court's reasoning and adopt the test set forth in *Liljeberg*.[5]

[¶12.] In upholding the conviction in this case, there is little risk of injustice to the parties. Initially, Shelton does not argue that the judge was biased or prejudiced against him in any way. Instead, Shelton erroneously argues that the judge lacked jurisdiction to proceed in the case, and as a result, the judgment of conviction was void. A thorough review of the record does not reveal any evidence of

---

5.    The adoption of this test does not in any way supersede or alter the well-settled test for determining whether a judge's impartiality might reasonably be questioned. That test is, and remains, whether "a reasonable person knowing all the facts [would] conclude that the judge's impartiality might reasonably be questioned[.]" *Marko*, 2012 S.D. 54, ¶ 22, 816 N.W.2d at 827 (citing *Sao Paulo State v. Am. Tobacco Co.*, 535 U.S. 229, 232–33, 122 S. Ct. 1290, 1292, 152 L. Ed. 2d 346 (2002); *Liljeberg*, 486 U.S. at 861, 108 S. Ct. at 2203). In the present case, the judge already made that determination. The test announced today is merely an aid in determining what action must be taken once it is found that a judge did, in fact, err by continuing to preside over the matter when their impartiality may have been reasonably questioned.

partiality. Further, it is not alleged, and it does not appear from the record, that the judge's ex-wife had any involvement in the matter. And while Shelton argues that in his experience, "an overwhelming majority of divorce cases have at least some level of animosity[,]" none was shown here.

[¶13.]     There is also little risk that denial of relief would produce injustice in other cases. Unlike the situation presented in *Liljeberg*, where the judge failed to disclose the potential basis for disqualification to the parties, the judge in this case upheld his ethical obligations under the Code of Judicial Conduct and made a full disclosure. The judge sent a letter to Shelton's counsel informing him of the potential basis for disqualification and filed the letter in the record. Although the judge erred by continuing to preside over the matter absent a waiver, Shelton compounded this error by failing to raise it. Other diligent parties faced with this scenario could simply object, bringing the matter to the judge's attention. If the judge persists, alternative remedies such as filing a writ of mandamus are also available. Our analysis in no way relieves judges of their obligation to disqualify themselves—this is, and remains, the ethical duty of judges. *See* Canon 3 E(1) ("A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned . . . ."). However, in determining whether upholding this conviction would produce injustice in other cases, we expect that parties in other cases would act diligently in preserving their rights.

[¶14.]     Finally, we must decide whether upholding this conviction would undermine the public's confidence in the judicial process. Based on the facts of this

particular case, we do not believe the public's confidence would be undermined. Most importantly, the judge disclosed to the parties the potential basis for disqualification. The purpose of Canon 3 E(1) "is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg*, 486 U.S. at 865, 108 S. Ct. at 2205. This purpose was fulfilled when the judge made his disclosure. Both parties knew of the potential basis for disqualification. Second, by requesting a written waiver, it was clear that the judge believed that he could remain impartial in the proceedings. Indeed, Canon 3 F only permits the waiver of judicial disqualification in instances where there is no "personal bias or prejudice concerning a party[.]" SDCL ch. 16-2 app. A. And finally, the record in this case does not reveal any instances of partiality. Consequently, while the judge erred by continuing to preside over this matter, we find that the error was harmless.

*Amended Information*

[¶15.]        Next, Shelton contends that the court lacked jurisdiction to proceed in this matter because he did not receive a preliminary hearing after the State filed an amended information. As authority for this argument, Shelton cites *Honomichl v. State*, 333 N.W.2d 797, 798 (S.D. 1983), for the general proposition that courts do not acquire subject matter jurisdiction without "a formal and sufficient indictment or information[.]" The State maintains that the filing of the amended information was unnecessary and that the original indictment filed was sufficient for the court

to proceed. We do not reach the State's argument because Shelton's position on jurisdictional defect is incorrect.

[¶16.] It is well settled that a court's failure to hold a preliminary hearing is not a jurisdictional defect. *See State v. King*, 62 S.D. 184, 252 N.W. 36, 37 (1934); *State v. Janssen*, 371 N.W.2d 353, 356 (S.D. 1985); *see also* 22 C.J.S. *Criminal Procedure and Rights of Accused* §24, Westlaw (database updated June 2017) ("The failure to give a preliminary hearing or examination is not a jurisdictional defect . . . ."). Instead, it is grounds for the dismissal of the information, SDCL 23A-8-2(9), but only if the defendant objects before trial, SDCL 23A-8-3(1). If a defendant fails to object before trial, the issue is waived. SDCL 23A-8-9. Shelton failed to object before trial. As a result, this issue "is not preserved for appeal." *State v. Lachowitzer*, 314 N.W.2d 307, 309 (S.D. 1982). We reiterated in *Lachowitzer*, "[a] criminal trial is not a game where defendant's counsel may lie in the weeds and hold back motions or objections that go to the very heart of the prosecution. There exist ample means of attacking the sufficiency of the charge prior to trial." *Id.* (quoting *State v. Williams*, 297 N.W.2d 491, 493 (S.D. 1980)).

## Conclusion

[¶17.] Absent a waiver by the parties, the judge in this case erred by continuing to preside over the matter after he deemed himself disqualified under the Code of Judicial Conduct. However, the error was harmless under the test set forth in *Liljeberg*. Further, Shelton waived the issue relating to a preliminary hearing when he failed to object before trial.

[¶18.] GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, and WILBUR, Retired Justice, concur.